UNITED STATES DISTRICT COURT
For the Northern District of California

1
2
3
4
5
6
7
8

UNITED STATES  DISTRICT COURT

9

Northern District of California

10

San Francisco Division

11

PENSION TRUST FUND FOR OPERATING
ENGINEERS, et al.,

No. C 11-02851 LB

12

Plaintiffs,

**ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT AGAINST DALECON,
INC.**

13
14

v.

DALECON, INC., et al.,

[Re: ECF No. 127]

15
16

Defendants.

_____/

17

**INTRODUCTION**

18

In this action, plaintiffs Pension Trust Fund for Operating Engineer (the "Trust"), F.G.

19

Crosthwaite, and Russell E. Burns (collectively, "Plaintiffs") sued Dalecon, Inc. ("Dalecon"), Aleut

20

Sons Construction, Inc. ("Aleut Sons Construction"), Dale Stickney Construction, Inc. ("Dale

21

Stickney Construction"), Dale Homes, Inc. ("Dale Homes"), Dale Properties, Inc. ("Dale

22

Properties"), Point West Properties, LLC ("Point West"), RHS Norcal Investments, LLC ("RHS"),

23

Plus Housing & Development, Inc. ("Plus Housing"), DSCI Group, Inc. ("DSCI"), and individuals

24

Ronald Stickney ("Mr. Stickney") and James Underwood ("Mr. Underwood") (collectively,

25

"Defendants"), for Dalecon's failure to pay withdrawal liability in violation of the parties' collective

26

bargaining agreements, the trust agreement, and federal law.  *See* Complaint, ECF No. 1.[1]  Mr.

27

28

_____

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
generated page number at the top of the document.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Stickney, Mr. Underwood, and Dale Stickney Construction were dismissed from this action.

2   Voluntary Dismissal, ECF No. 108; Stipulation of Dismissal, ECF No. 121.  The Clerk of the Court

3   entered default against Aleut Sons Construction, Dale Homes, Dale Properties, Point West, RHS,

4   Plus Housing, and DSCI (the "Defaulting Defendants").  Entry of Default, ECF No. 14.  Plaintiffs

5   now move for summary judgment against Dalecon.[2]  The court held a hearing on the motion on

6   February 20, 2014.  2/20/2014 Minute Order, ECF No. 140.  Upon consideration of the papers

7   submitted, the arguments of counsel at the hearing, and the applicable authority, the court **GRANTS**

8   Plaintiff's motion and finds that Plaintiffs should be awarded $423,389.77, which includes $242,614

9   in assessed withdrawal liability, $77,171.67 in interest, $48,522.80 in liquidated damages,

10  $53,367.50 in attorney's fees, and $1,713.80 in costs.[3]

11  **STATEMENT**

12  **I. FACTS**

13      This action arises under Employment Retirement Income Security Act of 1974 ("ERISA"), as

14  amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§

15  1001-1461 (1982).

16      The Trust is: (a) an employee benefit plan as defined in the ERISA § 3(3) (29 U.S.C. § 1002(3));

17  (b) an "employee benefit pension plan" as defined in ERISA § 3(2) (29 U.S.C. § 1002(2)); and (c) a

18  "multiemployer plan" as defined in ERISA §§ 3(37) and 4001(a)(3) (29 U.S.C. §§ 1002(37) and

19  1301(a)(3)).  Complaint, ECF No. 1 ¶ 6; Joint Statement, ECF No. 128 ¶ 2; Trento Declaration, ECF

20  No. 113 ¶ 2.  The Trust primarily covers employers in the building and construction industry.

21  Trento Declaration, ECF No. 113 ¶ 2.  The Trust is maintained pursuant to the Labor Management

22

23      [2] Plaintiffs also move for default judgment against the Defaulting Defendants.  Motion for

24  Default Judgment, ECF No. 117.  Because the Defaulting Defendants have neither consented to nor
    declined the undersigned's jurisdiction, the court will separately issue a report and recommendation

25  recommending that a district judge grant that motion and enter judgment in this case.

26      [3] Pursuant to 28 U.S.C. § 636(c), Plaintiffs and Dalecon previously consented to the

27  undersigned's jurisdiction, *see* Consent (Plaintiffs), ECF No. 10; Consent (Dalecon), ECF No. 97,
    and at the February 20, 2014 hearing, in light of the Defaulting Defendants' failure to appear in this

28  action, they specifically consented again to the undersigned deciding Plaintiffs' motion for summary
    judgment, *see* 2/20/2014 Minute Order, ECF No. 140.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    Relations Act § 302(c) (29 U.S.C. §186(c)) and is jointly administered.  Complaint, ECF No. 1 ¶ 6;

2    Trento

3    Declaration, ECF No. 113 ¶ 2.  At all relevant time periods, Associated Third Party Administrators

4    ("ATPA") was the third party administrator for the Trust.  Joint Statement, ECF No. 128 ¶ 3; Trento

5    Declaration, ECF No. 113 ¶ 1.

6         Plaintiffs F.G. Crosthwaite and Russell E. Burns are members of the Board of Trustees of the

7    Trust ("Trustees").  Complaint, ECF No. 1 ¶ 7; Trento Declaration, ECF No. 113 ¶ 3.  The Trustees

8    are "fiduciaries" with respect to the Trust as defined in ERISA § 3(21)(A) (29 U.S.C. §

9    1002(21)(A)) and are collectively the "plan sponsor" of the Board of Trustees within the meaning of

10   ERISA §§ 3(16)(B)(iii) and 4001(a)(10)(A) (29 U.S.C. §§ 1002(16)(B)(iii) and 1301(a)(10)(A)).

11   Complaint, ECF No. 1 ¶ 7.  As Trustees of the Trust, they are empowered to bring this action on

12   behalf of the Trust pursuant to ERISA §§ 4301(a)(1) & (b) and 502(a)(3) (29 U.S.C. §§ 1132(a)(3)

13   and 1451(a)(1) & (b)).  Complaint, ECF No. 1 ¶ 7.

14        Defendant Dalecon is a dissolved California corporation with its principal place of business

15   located at 2727 Churn Creek Road, Suite A, Redding, California at all relevant time periods.

16   Complaint, ECF No. 1 ¶ 8; Joint Statement, ECF No. 128 ¶ 4; Richardson Declaration, ECF No. 112

17   ¶ 4 & Ex. A.  Dalecon was an employer within the meaning of ERISA § 3(5) (29 U.S.C. § 1002(5))

18   and the National Labor Relations Act ("NLRA") § 2(2) (29 U.S.C. §152(2)) and was engaged in an

19   industry affecting commerce within the meaning of ERISA § 3(11) and (12) (29 U.S.C. § 1002(11)

20   and (12)).  Complaint, ECF No. 1 ¶¶ 8, 15; Joint Statement, ECF No. 128 ¶ 5.  Dalecon was a

21   participating employer in the Trust pursuant to collective bargaining agreements ("CBAs") with the

22   Operating Engineers Local Union No. 3 ("Union") which required it to make fringe benefit

23   contributions for all covered work performed by its employees.  Complaint, ECF No. 1 ¶ 15; Joint

24   Statement, ECF No. 128 ¶¶ 6 (listing six collective bargaining agreements), 7; Trento Declaration,

25   ECF No. 113 ¶ 5 & Ex. A (attaching those agreements).  Dalecon was owned, operated, and

26   controlled by Defendants James Underwood and Ronald Stickney.  Complaint, ECF No. 1 ¶ 9.

27   Plaintiffs allege that Mr. Underwood and Mr. Stickney also controlled the Defaulting Defendants,

28   making Dalecon and the Defaulting Defendants (collectively, the "Entity Defendants") part of the

1   same controlled group.  Complaint, ECF No. 1 ¶ 9; Joint Statement, ECF No. 128 ¶ 26.  This means

2   that the Entity Defendants are treated as a single employer pursuant to ERISA § 4001(b)(1) (29

3   U.S.C. §1301(b)) and therefore are jointly and severally liable for the withdrawal liability at issue

4   here.  Complaint, ECF No. 1 ¶ 9.

5        On or about May 2007, Dalecon became delinquent under the CBAs.  Complaint, ECF No. 1 ¶

6   16.  An audit revealed further delinquent amounts for the period from June 2004 through June 2007.

7   *Id.*  Thus, on October 10, 2007, Plaintiffs filed the action entitled *Gil Crosthwaite, et al. v. Dalecon,*

8   *Inc., et al.*, Case No. C07-5192 WHA (the "Delinquency Action"), seeking those delinquent

9   contributions pursuant to 29 U.S.C. § 1945.[4]  *Id.*; *see* Delinquency Action, ECF No. 1 (Oct. 10,

10   2007).

11       Plaintiffs voluntarily dismissed the Delinquency Action on October 17, 2008, after the parties

12   entered into a stipulated settlement agreement on October 10, 2008.  Joint Statement, ECF No. 128

13   ¶¶ 9, 24-29 & Ex. 1 (the "Stipulation"[5]).  Pursuant to the Stipulation, Dalecon and Mr. Stickney

14   agreed to pay Plaintiff's $136,000 in settlement of their claims for delinquent contributions.  *Id.*,

15   ECF No. 128, Ex. A, ¶ 2(a).  The Stipulation included the following relevant terms:

16        1.  Under the terms of their Collective Bargaining Agreement and Trust Agreements,
         Plaintiffs contend that Defendant[s have] become indebted to the Plaintiffs for
17        contributions, liquidated damages, interest, [and] attorneys fees and costs, including
         those amounts found due on an audit of Defendants' records.  Plaintiffs filed this
18        action to seek to collect the amounts they claim are due from Defendant[s].  The
         parties acknowledge and agree that by this Agreement and Stipulation they are
19        compromising disputed claims[.]

20   ─────────────────

21        [4] 29 U.S.C. § 1145 provides, "every employer who is obligated to make contributions to a
22   multiemployer plan under the terms of the plan or a collectively bargained agreement shall, to the
     extent not inconsistent with the law, make such contributions in accordance with the terms and
23   conditions of such plan or such agreement."  Section 1145 thus creates a claim against employers
     who do not make timely contributions as required under a collective bargaining agreement.  *See*
24   *Trustees of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA Inc.*, 572 F.3d 771,
25   774-76 (9th Cir. 2009); *Board of Trustees v. RBS Washington Blvd. LLC*, No. C 09-06660 WHA,
     2010 WL 145097, at *2 (N.D. Cal. Jan. 8, 2010).
26

27        [5] To avoid confusion, the court refers to the parties' agreement, which is titled "Settlement
     Agreement and Stipulation for Entry of Judgment," as the "Stipulation" rather than the "Settlement
28   Agreement" or "Stipulated Settlement" because the parties to refer to it as the "Stipulation" in their
     joint statement of undisputed facts and briefs.

2.  The parties to this action have agreed to resolve this matter as follows:

(a)  Defendant shall pay the amount of $136,000 (the "Settlement Amount") as follows:

Within thirty (30) days of Defendant's execution of this Stipulation, defendant will make an initial payment in the amount of $20,000.00.  Within thirty (30) days after the date of the initial payment, defendant will make a second payment in the amount of $20,000.00.

Thereafter, defendant will continue with monthly payments of $10,000.00 to be received by plaintiffs on or before the 15th of each month beginning with December 15, 2008, and continuing through August 15, 2009, and one final monthly payment of $6,000.00, plus all accrued interest, by September 15, 2009.  Defendant shall have the right to increase said monthly payments at any time and shall incur no prepayment penalties.

(b)  Interest will continue to accrue on the unpaid balance at the rate of 1% per month (12% per annum) as provided for in the Bargaining Agreement and Trust Agreements.

(c)  Each payment shall be applied first to unpaid interest and then to the reduction of the principal balance.

(d)  All payments made pursuant to this Stipulation shall be made payable to the "Operating Engineers Trust Funds," and timely delivered to Michele R. Stafford, Saltzman & Johnson Law Corporation, 44 Montgomery Street, Suite 2110, San Francisco, CA 94104, or to such other address as may be specified by Plaintiffs.

(e)  Upon execution of this Stipulation, Plaintiffs will file a Dismissal without Prejudice of the instant action.  This Stipulation is in complete satisfaction of all claims made by Plaintiffs in this action.  Accordingly, the parties release each other and their respective agents, employees, officers, shareholders, directors, successors, assigns, and attorneys from all injuries, damages, claims[,] and causes of action whatsoever, of whatever kind of nature, whether known or unknown, suspected or unsuspected, including any claims which the parties made or could have made.

The parties acknowledge and agree that there is a risk that after execution of this Stipulation they will incur or discover losses, damages, or injuries which are in some way caused by the events which were the subject of this release, but which are unknown and unanticipated at the time this Stipulation is signed.  The parties hereby assume the above-mentioned risks and understand that this Stipulation shall apply to all unknown or unanticipated results of the events which were the subject of this release, as well as those known and anticipated, and upon advice of counsel, waive and all rights under California Civil Code section 1542[,] which section has been explained and reads as follows:

A general release does not extend to claims which the creditor does not known or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The mutual releases stated above do not affect the parties' obligations set forth in this Stipulation.

A dismissal with Prejudice shall be filed by Plaintiffs once payment has been

made in full, and Plaintiffs confirm that the final payment(s) have cleared the bank.

*Id.* ¶¶ 1-2.[6]

Dalecon ceased contributing to the Trust for work performed after August 1, 2007, and thereby made a complete withdrawal from the Trust under ERISA § 4203 (29 U.S.C. § 1383). Complaint, ECF No. 17; Joint Statement, ECF No. 128 ¶ 8; Trento Declaration, ECF No. 113 ¶ 8.

Subsequent to the withdrawal, on three to four occasions, Plaintiffs were notified that "Dalecon trucks and equipment" were seen on worksites on which the workers were performing work of the type for which contributions were previously required to be made by Dalecon under the CBAs. *See* Complaint, ECF No. 1 ¶ 18; Richardson Declaration, ECF No. 112 ¶ 5.[7] As Plaintiffs had information indicating that Defendants had continued covered work within 5 years from the time Dalecon ceased to contribute to the Trust, withdrawal liability was assessed on the basis that Dalecon did not qualify for the building and construction exception to withdrawal liability under ERISA § 4203(b) (29 U.S.C. §1383(b)). Complaint, ECF No. 1 ¶ 18.

By letter dated September 2, 2010, Plaintiffs notified Dalecon and its controlled group members of the withdrawal liability assessed against it in the sum of $242,614.00, payable in a lump sum or in quarterly installments of $59,210.85, pursuant to ERISA §§ 4201- 4203 (29 U.S.C. § 1381 et seq.). Complaint, ECF No. 1 ¶¶ 19-20; Joint Statement, ECF No. 128 ¶¶ 10-11; Trento Declaration, ECF

---

[6] In the Delinquency Action, Plaintiffs voluntarily dismissed the case, and after a period of default, the defendants cured the default and made all payments pursuant to the Stipulation. *See* Delinquency Action, ECF Nos. 22-36.

[7] Paragraph 5 of the Richardson Declaration states as follows: "Subsequent to the withdrawal[,] the Union's District Representative observed Dalecon trucks and equipment on worksites, where the workers were performing work of the type for which contributions were previously required to be made by Defendant Dalecon under its Bargaining Agreement. This triggered the Fund to assess withdrawal liability." Richardson Declaration, ECF No. 112 ¶ 5. Dalecon objects to this paragraph as lacking foundation as required by Federal Rule of Evidence 602 and as containing hearsay that should be excluded under Federal Rule of Evidence 801(c). Objection, ECF No. 134. But as Plaintiffs explain, this statement is offered to show the basis for the Trust's decision to assess withdrawal liability, not to show the truth of the statement. Reply, ECF No. 135 at 2 n.3. Moreover, to challenge Plaintiffs' statement that the workers were performing work of the type for which contributions were previously required to be made by Defendant Dalecon under the CBAs, Defendants must have timely demanded arbitration under ERISA Section § 4221(a) (29 U.S.C. § 1401(a)), which they did not do.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  No. 113 ¶ 9 & Ex. D (September 2, 2010 Letter).  Plaintiffs calculated the withdrawal liability as of

2  December 31, 2006, pursuant to ERISA § 4211(b)(2)(A) (29 U.S.C. § 1391(b)(2)(A)).  Complaint,

3  ECF No. 1 ¶ 20(a); Joint Statement, ECF No. 128 ¶ 11(a); Trento Declaration, ECF No. 113, Ex. D.

4  Plaintiffs also advised Dalecon that it had the option of challenging the withdrawal liability

5  calculation by requesting review within ninety days of receiving the assessment as provided by

6  ERISA § 4219(b)(2) (29 U.S.C. § 1399(b)(2)) and thereafter, timely demanding arbitration under

7  ERISA Section § 4221(a) (29 U.S.C. § 1401(a)).  Complaint, ECF No. 1 ¶ 20; Joint Statement, ECF

8  No. 128 ¶ 11; Trento Declaration, ECF No. 113, Ex. D.  Dalecon did not request review or initiate

9  arbitration.  Complaint, ECF No. 1 ¶ 21; Joint Statement, ECF No. 128 ¶ 14.

10      Dalecon also failed to make any quarterly withdrawal liability installment payments.  Complaint,

11  ECF No. 1 ¶ 21; Joint Statement, ECF No. 128 ¶ 13; Trento Declaration, ECF No. 113 ¶ 10.  On

12  December 6, 2010, the Trust's legal counsel sent a notice to cure to Dalecon (by way of Mr.

13  Stickney) stating that the first quarterly withdrawal liability payment, which was due on October 1,

14  2010, had not been received by the Trust.  Complaint, ECF No. 1 ¶ 22; Joint Statement, ECF No.

15  128 ¶ 12; Richardson Declaration, ECF No. 112 ¶ 7 & Ex. B (December 6, 2010 Letter).  The

16  Trust's counsel directed Dalecon to cure the delinquency and advised that if payment was not

17  received within 60 days Dalecon would be in default under ERISA § 4219(c)(5) (29 U.S.C.

18  §1399(c)(5).  Complaint, ECF No. 1 ¶ 22; Joint Statement, ECF No. 128 ¶ 12; Richardson

19  Declaration, ECF No. 112, Ex. B.  Dalecon failed to cure the delinquent installment payments within

20  60 days.  Complaint, ECF No. 1 ¶¶ 22-23; Joint Statement, ECF No. 128 ¶ 13; Richardson

21  Declaration, ECF No. 112 ¶ 7.  As a result, pursuant to ERISA § 4219(c)(5) (29 U.S.C. §

22  1399(c)(5)), Plaintiffs accelerated the entire withdrawal liability which became immediately due and

23  payable with interest and liquidated damages on February 7, 2011 (*i.e.*, 60 days after Plaintiffs'

24  notice to cure).  Complaint, ECF No. 1 ¶ 23; Richardson Declaration, ECF No. 112 ¶ 7.

25  **II.  PROCEDURAL HISTORY**

26      Plaintiffs filed their complaint in this action on June 10, 2011.  Complaint, ECF No. 1.  They

27  served each Defendant with the complaint and summons on July 28, 2011.  Proofs of Service, ECF

28  Nos. 7, 8, 11.  Mr. Underwood and Mr. Stickney answered the complaint, but the Entity Defendants

1   failed to appear in this action, and upon Plaintiffs' request, the Clerk of the Court entered their

2   default.  Answer, ECF No. 6; Request, ECF No. 14; Entry of Default, ECF No. 15.  Dalecon

3   subsequently appeared and answered, and its default was set aside.  Entry of Default, ECF No. 15;

4   Stipulation to Set Aside Default, ECF No. 90; Dalecon Answer, ECF No. 91.  In its answer, Dalecon

5   asserted the affirmative defenses of "accord and satisfaction" and "release," arguing that Plaintiffs,

6   by agreeing to the Stipulated Judgment in the Delinquency Action, released the withdrawal liability

7   claim that they now bring.  *See* Dalecon Answer, ECF No. 91.

8       While this action was pending, Dale Stickney Construction and both Individual Defendants filed

9   for bankruptcy and therefore Plaintiffs' claims against them were or are still subject to an automatic

10  stay under 11 U.S.C. § 362.  Notices of Automatic Stay, ECF No. 13, 28, 57.  Plaintiffs subsequently

11  dismissed Mr. Underwood, Mr. Stickney, and Dale Stickney Construction from this action.

12  Voluntary Dismissal (Underwood and Dale Stickney Construction), ECF No. 108; Stipulation of

13  Dismissal (Stickney), ECF No. 121.  This leaves only the Dalecon and the Defaulting Defendants as

14  defendants to this action.

15      On December 12, 2013, Plaintiffs filed motions for default judgment against the Defaulting

16  Defendants and for summary judgment against Dalecon.  Motion for Default Judgment, ECF No.

17  115; Motion for Summary Judgment, ECF No. 127.  In both motions, Plaintiffs ask for an award of

18  $242,614 in assessed withdrawal liability, $77,171.67 in interest, $48,522.80 in liquidated damages,

19  $54,867.50 in attorney's fees, and $1,713.80 in costs, for a total award of $424,889.77.  Motion for

20  Default Judgment, ECF No. 115 at 8-10; Motion for Summary Judgment, ECF No. 127 at 17-18.

21  On January 16, 2014, Dalecon filed an untimely opposition to Plaintiff's motion for summary

22  judgment.  Dalecon's Opposition, ECF No. 133.  The court held a hearing on both motions on

23  February 20, 2014, and Plaintiffs and Dalecon appeared at it.  2/20/2014 Minute Order, ECF No.

24  140.

25                                   **ANALYSIS**

26  **I.  THE COURT GRANTS SUMMARY JUDGMENT AGAINST DALECON**

27      **A.  The Summary Judgment Legal Standard**

28      A court should grant a motion for summary judgment if there is no genuine issue of material fact

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson*, 477 U.S. at 248.  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Id.* at 248-49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion and identifying those portions of the pleadings depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex Corp.*, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party, which must go beyond the pleadings and submit admissible evidence supporting its claims or defenses and showing a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Nissan Fire*, 210 F.3d at 1103; *Devereaux*, 263 F.3d at 1076.  If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment.  *See Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.  The Statutory Withdrawal Liability Scheme**

Pension plans, including those like the Trust here, are federally regulated pursuant to ERISA, 29 U.S.C. § 1001 *et seq.*  The MPPAA, 29 U.S.C. §§ 1381–1453, amended ERISA "to allow plans to

impose proportional liability on withdrawing employers for the unfunded vested benefit obligations of multiemployer plans."[8]  *Carpenters Pension Trust Fund v. Underground Constr. Co., Inc.*, 31 F.3d 776, 778 (9th Cir. 1994).  "Prior to the enactment of the MPPAA, employers could withdraw from pension plans without paying their share of the plans' unfunded vested benefit liability." *Woodward Sand Co., Inc. v. W. Conf. Teamsters Pension Trust Fund*, 789 F.2d 691, 694 (9th Cir. 1986) (citing *Bd. of Trs. of the W. Conf. of Teamsters Pension Trust Fund v. Thompson Building Materials, Inc.*, 749 F.2d 1396, 1401-02 (9th Cir. 1984), *cert. denied*, 471 U.S. 1054 (1985)).  "The employers could simply cease making pension contributions (e.g., by ceasing covered business) and avoid any responsibility for the actual, but unfunded, liabilities of the plans." *Id.*  "The other employers remaining in the plan were forced either to assume these additional liabilities or to withdraw, resulting in unfairness to the remaining employers or insolvency of the plan." *Id.* (citing *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722, n.2 (1984)).

"To alleviate these problems, Congress established a system for computing and assessing the liability of employers who withdraw from pension plans." *Id.* (citing 29 U.S.C. § 1361 *et seq.*). "This system is designed to make employers pay their share of the real cost of pensions, by paying a share of the difference between the assets already contributed and the vested benefit liability." *Id.* (citing *R.A. Gray & Co.*, 467 U.S. at 723).  "When an employer withdraws from a multiemployer pension plan, such as the one administered by the Fund, ERISA requires a withdrawing employer to compensate a pension plan for benefits that have already vested with the employees at the time of the employer's withdrawal." *Id.* (citing *R.A. Gray & Co.*, 467 U.S. at 724).  "This 'withdrawal liability' is assessed against the employer to 'ensure that employees and their beneficiaries [are not] deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans.'" *Id.* (citing *R.A. Gray & Co.*, 467 U.S. at 720).  Given the remedial purposes of ERISA and the MPPAA, their provisions should be liberally construed to protect plan participants.  *See Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 175 (3d Cir. 2002) (citation omitted); *Teamsters Pension Trust Fund–Bd. of Trs. of W.*

---

[8] For a summary of the legislative history, see *Pension Benefit Guarantee Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720-25 (1984).

UNITED STATES DISTRICT COURT
For the Northern District of California

1   *Conference v. Allyn Transp. Co.*, 832 F.2d 505, 507 (9th Cir. 1987) (citation omitted).

2   29 U.S.C. § 1399 sets forth the procedure regarding the calculation and notification of a

3   withdrawing employer's withdrawal liability.  As soon as practicable after an employer's complete

4   or partial withdrawal, the plan sponsor must notify the employer of the amount owed and provides a

5   schedule of payments.  29 U.S.C. § 1399(b)(1).  The employer is entitled, within ninety days of such

6   notice, to ask the sponsor to review any specific matter relating to the determination of the

7   employer's withdrawal liability and schedule of payments, to identify any inaccuracies, or to provide

8   additional relevant information.  29 U.S.C. § 1399(b)(2)(A).  After a reasonable review of matters

9   raised, the plan sponsor then must notify the employer of its decision.  29 U.S.C. § 1399(b)(2)(B).

10   29 U.S.C. § 1401 provides a procedure in the event of a dispute.  Section 1401(a)(1)(A) states:

11       (1) Any dispute between an employer and the plan sponsor of a multiemployer plan
12       concerning a determination made under sections 4201 through 4219 [29 U.S.C. §
         1381–99] shall be resolved through arbitration. Either party may initiate the
13       arbitration proceeding within a 60–day period after the earlier of (A) the date of
         notification to the employer under section 4219(b)(2)(B) [29 U.S.C. § 1399(b)(2)(B)],
14       or (B) 120 days after the date of the employer's request under section 4219(b)(2)(A)
         [29 U.S.C. § 1399(b)(2)(A)].

15   Section 1401(b)(1) goes on to state:

16       If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts
17       demanded by the plan sponsor under section 4219(b)(1) [29 U.S.C. § 1399(b)(1)]
         shall be due and owing on the schedule set forth by the plan sponsor.  The plan
18       sponsor may bring an action in a State or Federal court of competent jurisdiction for
         collection.

19   An employer that fails to initiate arbitration in a timely manner waives defenses and objections that

20   must have been raised in arbitration.  *See Bd. of Trs Sheet Metal Workers' Nat'l Pension Fund v.*

21   *BES Servs., Inc.*, 469 F.3d 369, 376 (4th Cir. 2006); *Bd. of Trs of Trucking Employees of N. Jersey*

22   *Welfare Fund, Inc. v. Kero Leasing Corp.*, 377 F.3d 288, 294 n.5 (3d Cir. 2004); *Cent. States, Se.*

23   *and Sw. Areas Pension Fund v. Midwest Motor Exp., Inc.*, 181 F.3d 799, 805 (7th Cir. 1999); *Mason*

24   *and Dixon Tank Lines, Inc. v. Cent. States, Se. and Sw. Areas Pension Fund*, 852 F.2d 156, 166 &

25   n.11 (6th Cir. 1988); *Allyn Transp. Co.*, 832 F.2d at 505-06 (9th Cir. 1987).

26   **C.  Summary Judgment Should Be Entered against Dalecon**

27   Plaintiff argue that they are entitled to summary judgment against Dalecon because they

28   complied with the procedures for assessing withdrawal liability and Dalecon did not initiate

1   arbitration and thus waived its "accord and satisfaction" and "release" affirmative defenses.

2   Because these defenses essentially are the same—both assert that Plaintiffs released its withdrawal

3   liability claim through the Stipulation—the court hereinafter refers to them as a single "release"

4   defense.  Dalecon argues that it did not need to raise this defense in arbitration.  For the reasons

5   explained below, the court finds that while Dalecon did not waive its release defense, the defense is

6   unsupported, and summary judgment should be entered against it.

### 1.   Plaintiffs Have Made a Prima Facie Showing that They Are Entitled to Withdrawal Liability

9      Plaintiffs have made a prima facie showing that they are entitled to withdrawal liability.  They

10   provided evidence that Dalecon ceased contributing to the Trust for work performed after August 1,

11   2007, and thereby made a complete withdrawal from the Trust.  They also provided evidence

12   showing that they complied with the MPPAA's procedures for assessing withdrawal liability: they

13   notified Dalecon and its controlled group members of the withdrawal liability assessed against it in

14   the sum of $242,614.00, payable in a lump sum or in quarterly installments of $59,210.85; they

15   advised Dalecon that it had the option of challenging the withdrawal liability calculation by

16   requesting review within ninety days of receiving the assessment and thereafter by timely

17   demanding arbitration.  Dalecon did not request review or initiate arbitration also failed to make any

18   quarterly withdrawal liability installment payments.  The Trust's legal counsel then sent a notice to

19   cure to Dalecon (by way of Mr. Stickney) stating that the first quarterly withdrawal liability payment

20   had not been received, directing Dalecon to cure the delinquency, and advising that if payment was

21   not received within 60 days Dalecon would be in default.  Dalecon failed to cure the delinquent

22   installment payments within 60 days.  As a result, Plaintiffs accelerated the entire withdrawal

23   liability, which then became immediately due and payable with interest and liquidated damages on

24   February 7, 2011.  In short, unless Dalecon can show that it has a defense to Plaintiffs' claim or that

25   there is a genuine issue of material fact, Plaintiffs' motion should be granted.

### 2.   Dalecon Did Not Waive Its Release Defense by Not Initiating Arbitration

27      Despite finding that Plaintiffs have made a prima facie showing that they are entitled to

28   withdrawal liability, in considering Dalecon's arguments and to rule on Plaintiffs' motion, the court

**United States District Court**
**For the Northern District of California**

must determine a threshold issue: whether Dalecon waived its release defense by not presenting it in arbitration.

In their motion, Plaintiffs cite 29 U.S.C. § 1401(a)(1)(A), which, as stated above, provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 [29 U.S.C. §§ 1381–99] shall be resolved through arbitration." Motion, ECF No. 127 at 9; *see also Bd. of Trs. of the W. Conference Teamsters Pension Trust Fund v. Arizona-Pacific Tank Lines*, No. C 83 0317 AJZ, 1983 U.S. Dist. LEXIS 12709, at *2 (N.D. Cal. Oct. 14, 1983) (citing 29 U.S.C. § 1401(a)(1)(A) and highlighting its breadth). But these authorities not tell us whether Dalecon must have arbitrated its release defense; after all, 29 U.S.C. §§ 1381–99 "refer to the establishment, computation and collection of withdrawal liability," *Shelter Framing Corp. v. Pension Benefit Guar. Corp.*, 705 F.2d 1502, 1509 (9th Cir. 1983), *rev'd on other grounds*, 467 U.S. 717 (1984), and not all defenses fall into those categories, *see, e.g., id.* ("[T]he arbitration requirement does not apply where the constitutionality of the statute, not the establishment or amount of withdrawal liability, is at issue. The district court correctly found no mandatory arbitration requirement for determination of constitutional issues.").

Aside from these authorities, which address the arbitration requirement in general terms, Plaintiffs cite two out-of-circuit opinions—*ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879 (2d Cir. 1988), and *ILGWU Nat'l Ret. Fund v. West Helena-Helana Sportswear*, No. 96 Civ 1007 (HB)(DFE), 1996 U.S. Dist. LEXIS 20635 (S.D.N.Y. July 25, 1996)— that bear upon the issue presented here.[9] Motion, ECF No. 127 at 10-11. In *Levy Bros. Frocks*, a trust fund assessed withdrawal liability against a company in accordance with the MPPAA's procedures, and the company did not challenge the assessment through arbitration. 846 F.2d at 883. When the trust fund later sued the company, the company asserted, among other things, that it was not bound on

---

[9] Plaintiffs also cite *Chicago Truck Drivers, Helpers, and Warehouse Workers Union (Indep.) Pension Fund v. R. Sumner Trucking Co., Inc.*, No. 91 C 3967, 1992 WL 39004, at *1-2 (N.D. Ill. Feb. 24, 1992), but that opinion is unhelpful as the court, in a near-summary ruling, emphasized that it precluded defendant from raising its non-arbitrated defense to withdrawal liability in large part because the defendant provided no legal authority in support of its argument that it should be able to. *Id.* at 2.

and after the effective date of the MPPAA by a contract to contribute to the trust fund.  *Id.*  The question before the Second Circuit was whether the company had waived this defense by not arbitrating it.  *Id.* at 880.  It held that it had.  *Id.* at 884-87.  In so holding, it reasoned that the company's obligation to arbitrate was statutory, rather than contractual, in origin, and that the statute (29 U.S.C. § 1401) required the parties to arbitrate their dispute about whether the company was obligated to contribute to the trust fund during the relevant period.  *Id.*  The Second Circuit believed its ruling to be in accord with Congress' intention that disputes over withdrawal liability be resolved quickly, even if the failure to arbitrate certain defenses could result in waiving them.  *Id.* at 88–87.

The district court in *West Helena* made a similar ruling, but it made in the context of a prior settlement agreement.  In that case, an employer was a party to a collective bargaining agreement that required it to make payments to a retirement fund.  *West Helena*, 1996 U.S. Dist. LEXIS 20635, at *4.  The employer fell behind in making these payments, so the retirement fund sued the employer to recover them.  *Id.* at *5.  None of the pleadings in the action made any allegations about withdrawal liability; the allegations were about delinquent contributions only.  *Id.* at *6.  During the pendency of the action, the employer ceased all of its operations.  *Id.* at *5.  Thereafter, the parties to this action entered into a settlement agreement whereby the employer agreed to pay money to the retirement fund and, in exchange, the retirement fund agreed to release the employer "of and from any and all actions, causes of action, [etc.] . . . *for delinquent contributions*" owed to the retirement fund up to December 23, 1994, "*arising from the* [*collective bargaining agreement*] and related to the matters or allegations which are the subject matter of the current litigation between the parties . . . ."  *Id.* at *6-7 (emphasis in original).

After this, the retirement fund assessed withdrawal liability against the employer.  *Id.* at *7-8.  The employer argued that the settlement agreement covered any liability to the retirement fund, but the employer never initiated arbitration arguing this.  *Id.* at *8-9.  When the retirement fund later sued the employer to recover the withdrawal liability, the employer tried to assert its defense that the retirement fund released its claim to withdrawal liability.  *Id.* at *10-12.  The court rejected the employer's attempt and barred the employer from asserting it.  *Id.* at *12-21.  In so ruling, the court relied in part on the Second Circuit's holding in *Levy Bros. Frocks* that the company had waived its

UNITED STATES DISTRICT COURT
For the Northern District of California

1    defense by not arbitrating it and its reasoning that Congress intended disputes over withdrawal

2    liability be resolved quickly.  *Id.* at *13-15.  The court noted that the employer had not cited any

3    decision that disagreed with the Second Circuit's holding or reasoning.  *Id.* at *15.  Even though the

4    court deemed the defense waived, it still went on to explain that the defense failed because the

5    language in the release clearly related to delinquent contributions only and did not include

6    withdrawal liability; it was "totally unreasonable" to claim that it did.  *Id.* at *24-28.

7         In its opposition, Dalecon cites an opinion by Judge Conti of this District to argue that defenses

8    relating to whether a prior settlement agreement released withdrawal liability claims do not need to

9    be arbitrated.  Opposition, ECF No. 133 at 6-7 (citing *Operating Eng'rs Pension Trust Fund v.*

10   *Clark's Welding and Mach.*, 688 F.2d 902 (N.D. Cal. 2010)).  In *Clark's Welding*, two individuals

11   purchased a welding business that was subject to a shop agreement with operating engineers.  *Id.* at

12   905.  The owners closed the business in 2003 and sold the assets to a former employee.  *Id.*  Shortly

13   thereafter, the operating engineers' pension fund sued the welding business and its owners for failing

14   to pay contributions required by the shop agreement.  *Id.*  In 2004, the parties entered into a

15   settlement agreement and dismissed the action.  *Id.*  Pursuant to the settlement agreement, the

16   business agreed to pay its delinquent contributions, and the pension fund agreed to waive liquidated

17   damages and interest.  *Id.*  The settlement agreement also contained a mutual release, which stated as

18   follows:

19        This Agreement embodies the entire Agreement between the parties hereto.  All prior
          understandings and agreements by and between the parties hereto are merged into and
20        superseded by this Agreement and no party released herein shall be bound by or
          liable for any statement, representation, promise, inducement or understanding of any
21        kind or nature not set forth herein.  This Agreement is the product of negotiation and
          preparation by and amount [sic] the parties hereto and their attorneys, if any.
22        Therefore, the parties acknowledge and agree that this Agreement shall not be
          deemed to have been prepared or drafted by one party or another, and that it shall be
23        construed accordingly.

24   *Id.* at 906.

25        Over four years later, the pension fund assessed withdrawal liability against the business, and the

26   business did not seek review of the withdrawal liability assessment or initiate arbitration.  *Id.*  In the

27   subsequent suit by the pension fund against the business to recover the assessed withdrawal liability,

28   the business asserted in defense that the pension fund released its claim for withdrawal liability in

the 2004 settlement agreement. *Id.* at 909. The pension fund argued that the business waived this

defense by not initiating arbitration. *Id.* Although Dalecon cites Judge Conti's February 10, 2010

summary judgment order for his ruling on this issue, *see* Opposition, ECF No. 133 at 7 (citing

*Clark's Welding*, 688 F.2d at 909), Judge Conti first ruled on the issue (and provided significant

detail) in his May 8, 2009 order denying the business's motion to dismiss, *see Operating Eng'rs*

*Pension Trust Fund v. Clark's Welding and Mach.*, No. 09-0044 SC, 2009 WL 1324049, 2009 U.S.

Dist. LEXIS 43379 (N.D. Cal. May 8, 2009).

In the May 8, 2009 order, Judge Conti ruled that the business had not waived its release defense

by not arbitrating it. *Id.* at *3. He first stated that "[d]isputes that have to be arbitrated concern 'the

establishment, computation and collection of withdrawal liability,'" *id.* (quoting *Shelter Framing*,

705 F.2d at 1509), and that "[d]isputes concerning the establishment of withdrawal liability turn on

whether the employer's conduct constitutes a complete or partial withdrawal from a pension plan,"

*id.* (citing 29 U.S.C. § 1381; *Allyn Transp.*, 832 F.2d at 505-06). He also noted that the Third

Circuit has "determined that the issue of whether there had been a breach of a settlement agreement

d[oes] not fall into any of the categories that the MPPAA deems arbitrable," *id.* (citing *Bd. of Trs. of*

*Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 506-07 (3d Cir.

1992)), and that the Tenth Circuit, when holding that "the defense of laches [is] not barred by a

failure to arbitrate," has stated that "'[g]enerally . . . the only defenses which are waived by a failure

to timely initiate arbitration are those which go to the merits of the liability assessment itself,'" *id.*

(quoting *In re Centric Corp.*, 901 F.2d 1514, 1518-19 (10th Cir. 1990)). Indeed, in *Centra*, the

Third Circuit expressed concern that requiring every issue that bears upon the determination of the

amount of withdrawal liability to be arbitrated would moot the specifically enumerated list of

arbitrable issues set forth in 29 U.S.C. §§ 1381-1399. *Centra*, 983 F.2d at 507. Judge Conti also

distinguished *West Helena*, noting that the court there specifically found no unfairness in enforcing

the arbitration requirement because it was "totally unreasonable" to argue that the settlement

agreement at issue there applied to withdrawal liability; in *Clark's Welding*, Judge Conti found the

release language to be broad enough that the business could "reasonably contend" that it covered

withdrawal liability in addition to delinquent contributions. *Id.* at *4. Judge Conti also noted that

UNITED STATES DISTRICT COURT
For the Northern District of California

1    the *West Helena* court did not consider the Third Circuit's decision in *Centra* "that questions

2    concerning the validity and effect of a prior settlement agreement do not have to be submitted to an

3    arbitrator." *Id.* (citing *Centra*, 983 F.2d at 506-07). He also made clear that, to the extent that

4    Congress intended that withdrawal liability be decided quickly through arbitration, that rationale did

5    not carry much weight where the pension fund waited over four years from the signing of the

6    settlement agreement to assess withdrawal liability. *Id.*

7        Plaintiffs did not respond to Dalecon's argument in their reply, *see generally* Reply, ECF No.

8    135, but at oral argument they conceded that the withdrawal liability and the parties' agreement

9    about any liability are best suited to an arbitrator's expertise in the first instance. The court's own

10   research yielded no appellate or district court opinions specifically addressing whether an employer

11   must arbitrate a release-in-a-prior-settlement-agreement defense to withdrawal liability. *But see Trs.*

12   *of Utah Carpenters' and Cement Masons' Pension Trust v. Indus. Power Contractors Plan Maint.*

13   *Servs.*, Nos. 2:09CV929DAK, 2:10CV334DAK, 2011 WL 6130932, at *6 (D. Utah Dec. 8, 2011)

14   (stating in dicta that "[e]ven where there are questions as to whether the pension plan had any basis

15   to assess withdrawal liability, the failure to arbitrate is fatal.") (citing *Trs. of Utah Carpenters' and*

16   *Cement Masons' Pension Trust v. New Star/Culp L.C.*, No. 2:07-CV-699 (TC), 2009 WL 321573, at

17   *3 n.2 (D. Utah Feb. 9, 2009) (describing the "unique situation" where a trust fund "might have

18   previously concluded that [the employer] had not incurred withdrawal liability" but might later have

19   changed its mind later and suggesting that the employer would have had to arbitrate a defense based

20   on this situation)). So, with little to go on, and out of an abundance of caution, the court concludes

21   on this record and argument that Dalecon did not waive its release defense by not arbitrating it. The

22   court finds Judge Conti's opinion appropriately cautious, as he relied upon the Ninth Circuit's

23   statement that the arbitrable issues under the MPPAA "concern 'the establishment, computation and

24   collection of withdrawal liability,'" and emphasized that it is not clear that a defense based on a

25   release found within a prior settlement agreement always concerns these matters. *Clark's Welding*,

26   2009 WL 1324049, at *3 (quoting *Shelter Framing*, 705 F.2d at 1509). The court also takes

27   seriously the Third Circuit's concern that pushing the boundaries of the MPPAA's enumerated list

28   of arbitrable issues eventually could defeat the purpose of having a list at all. *See Centra*, 983 F.2d

at 507.  And while *West Helena* is thorough and well-reasoned, the court finds Judge Conti's

approach to be better suited to the circumstances presented here.

### 2.  Even So, Dalecon's Release Defense Fails

Now that the court has found that Dalecon did not waive its release defense, the court proceeds

to determine whether Dalecon has met its burden to show that it has merit.[10]

"[F]ederal law always governs the validity of releases of federal causes of action."  *Mardan*

*Corp. v. CGC Music, Ltd.*, 804 F.2d 1454, 1455 (9th Cir. 1986) (citing *Dice v. Akron, Canton &*

*Youngstown R.R. Co.*, 342 U.S. 359, 361 (1952); *Salmeron v. United States*, 724 F.2d 1357, 1361

(9th Cir. 1983); *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981)).  "Frequently," however, "state

rules of decision will furnish an appropriate and convenient measure of the governing federal law."

*Id.* at 1458 (citations omitted); *see Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 458-59

(7th Cir. 1991) (relying on state law to determine scope of release of ERISA claims); *Clark's*

*Welding*, 688 F.2d at 910-11 (relying on state law to interpret language of settlement agreement in

ERISA withdrawal liability action); *Cent. States, Se. and Sw. Areas Pension Fund v. Art Pape*

*Transfer, Inc.*, 881 F. Supp. 1168, 1172-73 (N.D. Ill. 1995) (same).  And Plaintiffs and Dalecon both

agree that California law applies to the interpretation of the Stipulation.  *See* Motion, ECF No. 127

at 11-16 (relying on California law); Opposition, ECF No. 133 at 9-10 (same).

"According to the California Supreme Court, a release is the 'abandonment, relinquishment or

giving up of a right or claim to the person against whom it might have been demanded or enforced . .

. and its effect is to extinguish the cause of action.'"  *Marder*, 450 F.3d at 449 (quoting *Pellett v.*

*Sonotone Corp.*, 26 Cal. 2d 705, 711 (1945)); *see also* Cal. Civ. Code § 1541 ("An obligation is

extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or

in writing, with or without new consideration.").  "'In general, a written release extinguishes any

obligation covered by the release's terms, provided it has not been obtained by fraud, deception,

---

[10] Dalecon has the burden to show that its release defense precludes liability for Plaintiffs'
withdrawal liability claim.  *See Miles v. Am. Seafoods Co.*, 197 F.3d 1032, 1034 (9th Cir. 1999) ("At
oral argument, counsel for defendant properly conceded that because it had pled the release as an
affirmative defense, the burden of proving that it precluded liability for the 1997 injury rested on
defendant.") (citing Fed. R. Civ. P. 8(c)).

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   misrepresentation, duress, or undue influence.'" *Marder*, 450 F.3d at 449 (quoting *Skrbina v.*

2   *Fleming Cos.*, 45 Cal. App. 4th 1353 (3d Dist. 1996)).

3       "The interpretation of a release is governed by the same principles applicable to any other

4   contractual agreement." *Id.* (citing *Benedek v. PLC Santa Monica, LLC*, 104 Cal. App. 4th 1351,

5   1357 (2d Dist. 2002)). "The court must interpret the [r]elease so as to give effect to the parties'

6   mutual intent as it existed when they contracted." *Id.* (citing Cal. Civ. Code § 1636; *Bank of the W.*

7   *v. Superior Court*, 2 Cal. 4th 1254, 1264-65 (1992)). "The parties' intent should be inferred from

8   the language of the [r]elease, so long as that language is not ambiguous or uncertain." *Id.* (citing

9   Cal. Civ. Code §§ 1638, 1639). "'Where contract language is clear and explicit and does not lead to

10  absurd results, [the court] ascertains intent from the written terms and go[es] no further.'" *Shaw v.*

11  *Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 53 (3d Dist. 1997) (quoting *Ticor Title Ins. Co. v.*

12  *Employers Ins. of Wausau*, 40 Cal. App. 4th 1699, 1707 (1st Dist. 1995)).

13      Dalecon first argues that the Stipulation should be read to release it from withdrawal liability as

14  well as liability for delinquent contributions because the release language is broad.  *See* Opposition,

15  ECF No. 133 at 8, 10.  In support of this argument, Dalecon quotes the following portion of the

16  release:

17          . . . the parties release each other and their respective agents, employees, officers,
            shareholders, directors, successors, assigns, and attorneys from all injuries, damages,
18          claims[,] and causes of action whatsoever, of whatever kind of nature, whether
            known or unknown, suspected or unsuspected, including any claims which the parties
19          made or could have made.

20          The parties acknowledge and agree that there is a risk that after execution of this
            Stipulation they will incur or discovery losses, damages, or injuries which are in
21          some way caused by the events which were the subject of this release, but which are
            unknown and unanticipated at the time this Stipulation is signed.  The parties hereby
22          assume the above-mentioned risks and understand that this Stipulation shall apply to
            all unknown or unanticipated results of the events which were the subject of this
23          release, as well as those known and anticipated, and upon advice of counsel, waive
            and all rights under California Civil Code section 1542[,] which section has been
24          explained and reads as follows: . . . .

25  Stipulation, ECF No. 128, Ex. 1 ¶ 2(e).  This portion of the release, on its own, does suggest that the

26  release is broad enough to account for withdrawal liability.  This quotation is selective, however.

27  The court fully quoted Paragraphs 1 and 2 of the Stipulation in the Statement section of this order.

28  Paragraph 1 defines the nature of the dispute: Defendant's indebtedness to Plaintiffs for

"contributions, liquidated damages, interest, attorneys fees and costs, including those amounts found due on an audit of Defendants' records"; Plaintiffs' lawsuit "to collect the amounts they claim are due from Defendant"; and the parties' acknowledgment that by their settlement agreement "they are compromising disputed claims." *Id.* ¶ 1.  Paragraph 2 provides the details.  It first sets forth the settlement amount of $136,000 for the delinquent contributions, then describes the payment plan, and concludes with the parties' mutual release.  *Id.* ¶ 2(a)-(e).  Subparagraph (e) is the release that Defendants quoted selectively.  In full, it reads as follows:

> (e)  Upon execution of this Stipulation, Plaintiffs will file a Dismissal without Prejudice of the instant action.  This Stipulation is in complete satisfaction of all claims made by Plaintiffs in this action.  Accordingly, the parties release each other and their respective agents, employees, officers, shareholders, directors, successors, assigns, and attorneys from all injuries, damages, claims[,] and causes of action whatsoever, of whatever kind of nature, whether known or unknown, suspected or unsuspected, including any claims which the parties made or could have made.

> The parties acknowledge and agree that there is a risk that after execution of this Stipulation they will incur or discover losses, damages, or injuries which are in some way caused by the events which were the subject of this release, but which are unknown and unanticipated at the time this Stipulation is signed.  The parties hereby assume the above-mentioned risks and understand that this Stipulation shall apply to all unknown or unanticipated results of the events which were the subject of this release, as well as those known and anticipated, and upon advice of counsel, waive and all rights under California Civil Code section 1542[,] which section has been explained and reads as follows:

>> A general release does not extend to claims which the creditor does not known or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

> The mutual releases stated above do not affect the parties' obligations set forth in this Stipulation.

> A dismissal with Prejudice shall be filed by Plaintiffs once payment has been made in full, and Plaintiffs confirm that the final payment(s) have cleared the bank.

*Id.* ¶ 2(e).  In the preamble to the release that Dalecon omitted from its quotation, the parties reiterated that the settlement was "in compete satisfaction of all claims made by Plaintiffs in this action," meaning, as made clear by Paragraph 1, Plaintiffs' delinquent contribution claims.  *Id.* ¶ 2(e).  This ties the release to Plaintiffs' claims in the Delinquency Action.  The next sentence is the parties' release.  It begins with the word "Accordingly" (again tying the release to the satisfaction of Plaintiffs' claims for delinquent contributions) and continues, "the parties release each other" from

all injuries, damages and claims "whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, including any claims which the parties made or could have made." *Id.* That "known or unknown" language is tied again, in the next two sentences, to the delinquent contribution claims that are the subject of the lawsuit: the parties define the risk of unknown claims as their discovery of "losses, damages, or injuries which are in some way caused by the events which were the subject of this release, but which are unknown and unanticipated at the time this Stipulation is signed" and state that the release applies to "all unknown or unanticipated results of the events which were the subject of this release, as well as those known and anticipated." *Id.* The release then waives all rights under California Civil Code § 1542, which defines a general release as extending only to known claims. This release is a standard Section 1542 waiver tied to known and unknown claims relating to the subject of the Delinquency Action. Withdrawal liability was not the subject of the Delinquency Action.[11]

In support of their argument that the release does not cover withdrawal liability, Plaintiffs cite Judge Conti's February 10, 2010 order granting summary judgment in *Clark's Welding*. *See* Motion, ECF No. 127 at 11-12, 16. In that case, after deciding that the business had not waived its release defense by not arbitrating it, Judge Conti went on to reject the merits of the business's release defense. *Clark's Welding*, 688 F.2d at 910-12. The business in that case made a similar argument that Dalecon makes here: that the mutual release language found in the settlement agreement covered withdrawal liability, even though the action settled was for delinquent contributions. *Id.* at 905, 910-11. The release language in *Clark's Welding* stated is relevant part:

---

[11] Also, withdrawal liability here was assessed because after the purported withdrawal on August 1, 2007, union representatives saw Dalecon trucks or equipment on site. *See* Complaint, ECF No. 1 ¶ 18; Richardson Declaration, ECF No. 112 ¶ 5; *see also supra* n.7. Because this covered work happened within five years from when Dalecon ceased to contribute to the Trust, Plaintiffs assessed withdrawal liability in September 2010 (calculated as of December 31, 2006), on the basis that Dalecon did not qualify for the building and construction exemption to withdrawal liability. See Complaint, ECF No. 1 ¶ 18. Thus, withdrawal liability in any event was not an "unknown" claim at the time of the lawsuit. Covered work that happens later means that withdrawal is not effective, and withdrawal liability is assessed back to the purported date of withdrawal (because the "withdrawal" is essentially ineffective). And as discussed *infra*, if there were fact issues that attend withdrawal liability, Dalecon waived them by not invoking arbitration.

This Agreement embodies the entire Agreement between the parties hereto.  All prior understandings and agreements by and between the parties hereto are merged into and superseded by this Agreement and no party released herein shall be bound by or liable for any statement, representation, promise, inducement or understanding of any kind or nature not set forth herein.

*Id.* at 906.  In rejecting the business's argument, Judge Conti noted that this paragraph was the only place that the word "release" occurred in the settlement agreement and was mentioned only in the context of an integration clause clarifying that any other agreements or understandings of the parties are superseded by the settlement agreement.  *Id.* at 910.  He found that the only reasonable interpretation of the phrase "no party released herein" was as a reference to the fact that, earlier in the settlement agreement, the pension fund waived its right to seek liquidated damages and interest.  *Id.* (Liquidated damages and interest are often sought in relation to delinquent contributions.)  He also noted that the words "withdrawal liability" did not appear anywhere in the settlement agreement and that is was clear that the settlement agreement focused on delinquent contributions, not withdrawal liability.  *Id.* at 911.

The release language in the Stipulation here is fuller than the language quoted in *Clark's Welding*.  Still, like the language in *Clark's Welding*, the Stipulation does not include the words "withdrawal liability" anywhere.  And, as the court pointed out above, the full language of the Stipulation—which Dalecon failed to quote in its opposition—indicates that the Stipulation focused specifically and exclusively on the claims for delinquent contributions that Plaintiffs brought in the Delinquency Action.  This is an important distinction because liability for delinquent contributions and withdrawal liability are completely different: one is based upon the parties' contractual obligations, while the other is a creature of statute; they are "wholly distinct obligations, with different factual and legal predicates."  *West Helena*, 1996 U.S. Dist. LEXIS 20635, at *30 (distinguishing between the two claims and rejecting the employer's argument that the retirement fund's withdrawal liability action was barred by res judicata because of the retirement fund's prior delinquent contributions action).  In its opposition, Dalecon tries to distinguish *Clark's Welding* because, in that case, there was no related entity like Dale Stickney Construction here, *see* Opposition, ECF No. 133 at 7-8, but the court finds that distinction to be irrelevant.  What makes *Clark's Welding* helpful is Judge Conti's consideration of the settlement agreement's language, not

UNITED STATES DISTRICT COURT
For the Northern District of California

1    the presence (or lack thereof) of a related entity.  Applying the same approach here yields the result

2    that the Stipulation was about withdrawal liability.

3        Dalecon also argues that the Stipulation should be read to release it from withdrawal liability as

4    well as liability for delinquent contributions because Plaintiffs were aware when they signed the

5    Stipulation (Dalecon says) that Dalecon had already stopped operating and made a complete

6    withdrawal and that a related entity, Dale Stickney Construction, which is a nonunion construction

7    company related owned by Mr. Stickney and which was not a party to the CBAs, was going to

8    acquire Dalecon's trucks and equipment and start using them.  *See* Opposition, ECF No. 133 at 8-10.

9        To the extent that Dalecon's argument is that it is exempt from withdrawal liability pursuant to

10   the MPPAA's so-called "building and construction industry" exemption that is found at 29 U.S.C. §

11   1383(b), this argument fails.  Under this provision, "complete withdrawal" by an employer in the

12   building and construction industry occurs (and thus withdrawal liability arises) only when the

13   employer ceases to have an obligation to contribute under a multiemployer plan and the employer

14   either continues to perform work in the jurisdiction of the collective bargaining agreement of the

15   type for which contributions were previously required or resumes such work within 5 years after the

16   date on which the obligation to contribute under the plan ceases, and does not renew the obligation

17   at the time of the resumption.  *See* 29 U.S.C. § 1383(b)(2).  But this provision falls within the range

18   of provisions that are required, pursuant to 29 U.S.C. § 1401, to be resolved by arbitration.  *See* 29

19   U.S.C. § 1401(a)(1)(A) (providing that "[a]ny dispute between an employer and the plan sponsor of

20   a multiemployer plan concerning a determination made under sections 4201 through 4219 [29

21   U.S.C. §§ 1381–99] shall be resolved through arbitration").  Thus, courts uniformly hold such a

22   defense to have been waived when it was not first arbitrated, and here Dalecon did not initiate

23   arbitration.  *See Trs. of Laborers Dist. Council and Contractors Pension Fund of Ohio v. Excel*

24   *Contracting, Inc.*, No. 2:12-CV-462, 2012 WL 4322572, at *3-5 (S.D. Ohio Sept. 20, 2012); *Bd. of*

25   *Trs. Sheet Metal Workers' Nat'l Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d

26   854, 873-75 (E.D. Mich. 2010); *Trucking Employees of N. Jersey Welfare Fund, Inc. v. Parsippany*

27   *Constr. Co., Inc.*, No. 08–2763 (JLL), 2009 WL 1076201, at *1, 3 (D.N.J. Apr. 21, 2009); *New*

28   *Star/Culp L.C.*, 2009 WL 321573, at *3-5; *Trs. of the Laborers' Local 310 Pension Fund v. Able*

UNITED STATES DISTRICT COURT
For the Northern District of California

*Contracting Group, Inc.*, No. 1:06cv1925, 2007 WL 2238361, at *6-7 (N.D. Ohio Aug. 1, 2007).

Nonetheless, to the extent that Dalecon's argument is that Plaintiffs' knowledge at the time the Stipulation is signed simply sheds light on the parties' intention, the court will address it.  Normally, under California's parol evidence rule, "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement," Cal. Code Civ. Proc. § 1856(a), but here, and unlike the settlement agreement at issue in *Clark's Welding*, the Stipulation here does not contain an integration clause.  *See generally* Stipulation, ECF No. 128, Ex. 1.  In this situation, under California law, even when a contract appears to the court to be unambiguous (as the Stipulation does here), extrinsic evidence can be used "to prove a meaning to which the language of the instrument is reasonably susceptible."  *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37 (1968); *see also Clark's Welding*, 688 F. Supp. 2d at 911.  A court "provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged . . . ."  *Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (2d Dist. 2004) (quoting *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (4th Dist. 1992)).  A court's determination of whether an ambiguity exists is a question of law.  *Clark's Welding*, 688 F. Supp. 2d at 911.

Upon consideration of Dalecon's argument, the court still is not persuaded that the Stipulation releases Dalecon from withdrawal liability.  As Plaintiffs point out in their reply, Dalecon presents no evidence to suggest that Plaintiffs actually were aware at the time the Stipulation was signed that Dalecon already had completely withdrawn or that Dale Stickney Construction was going to acquire Dalecon's trucks and equipment and start using them.  *See* Reply, ECF No. 135 at 2.  Dalecon's argument about Plaintiffs' knowledge, then, is unsupported.  *Cf. Clark's Welding*, 688 F. Supp. 2d at 911-12 (the parties submitted evidence showing when the drafters of the settlement agreement first learned about the potential withdrawal liability claim).

Without any evidence to support its argument, and in light of the Stipulation making clear that Plaintiffs brought the Delinquency Action to recover delinquent contributions directly tying the

UNITED STATES DISTRICT COURT
For the Northern District of California

1  compromises Plaintiffs made in the stipulation to Plaintiffs' claims to recover those contributions,

2  the court finds that the Stipulation's release language is not ambiguous and that it did not release

3  Dalecon from withdrawal liability.  Any argument about withdrawal liability should have been

4  raised in arbitration, and it was not.  Accordingly, the court **GRANTS** Plaintiffs' motion for

5  summary judgment against Dalecon.

6  **II.  THE COURT FINDS THAT DALECON IS LIABLE FOR $423,389.77**

7       Plaintiffs request from Dalecon $242,614 in assessed withdrawal liability, $77,171.67 in interest,

8  $48,522.80 in liquidated damages, $54,867.50 in attorney's fees, and $1,713.80 in costs, for a total

9  award of $424,889.77.  Motion for Summary Judgment, ECF No. 127 at 17-18.   Plaintiffs are

10  entitled to all of these types of damages under ERISA § 4301 (b) (29 U.S.C. § 1451(b)), which

11  provides that, "[i]n any action under this section to compel an employer to pay withdrawal liability,

12  any failure of the employer to make any withdrawal liability payment within the time prescribed

13  shall be treated in the same manner as a delinquent contribution (within the meaning of section 515

14  [29 U.S.C. § 1145] )."  The following damages are available where an employer fails to pay required

15  contributions: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated

16  damages as provided by the plan (not to exceed 20% of the unpaid contributions); and (4) reasonable

17  attorney's fees and costs.  29 U.S .C. § 1132(g)(2).  Therefore, Plaintiffs may recover these types of

18  damages on their claim for unpaid withdrawal liability.  The appropriate amount of each type of

19  damages is discussed below.

20      **A.  Withdrawal Liability**

21       As explained above, under 29 U.S.C. § 1399, the amount of a withdrawing employer's

22  withdrawal liability is first computed by the pension plan's sponsor.  The employer is then notified

23  of the amount owed and is entitled, within ninety days of such notice, to ask the sponsor to review

24  any specific matter relating to the determination of the employer's withdrawal liability.  29 U.S.C. §

25  1399(c).  "Any dispute" between an employer and the plan sponsor relating to the employer's

26  withdrawal liability "shall be resolved through arbitration."  29 U .S.C. § 1401(a)(1).  Arbitration

27  may be initiated "within a 60–day period" after the employer is notified of the sponsor's final

28  determination concerning withdrawal liability (or 120 days after the employer requested the sponsor

UNITED STATES DISTRICT COURT
For the Northern District of California

1    to review the matter, whichever date is earlier).  29 U.S.C. § 1401(a)(1).  If arbitration proceedings

2    are not initiated within the time periods prescribed by the statute, "the amounts demanded by the

3    plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor."  29 U.S.C.

4    § 1401(b)(1).  If the employer fails to make payment when due, and fails to cure the delinquency

5    within sixty days of notice of the delinquency, the plan sponsor is entitled to obtain immediate

6    payment of the entire amount of the employer's outstanding withdrawal liability.  29 U.S.C. §

7    1399(c)(5).

8        Here, Plaintiffs assessed Dalecon's withdrawal liability to be $242,614.00.  Plaintiffs followed

9    the procedures required by the MPPAA for computing the amount and notifying Dalecon and its

10   controlled group members of the withdrawal liability assessed.  Neither Dalecon nor its controlled

11   group members disputed the amount or made any payment.  Thus, Plaintiffs' assessed withdrawal

12   liability of $127,795.00 is binding on Dalecon under ERISA § 4221(b)(1) (29 U.S.C. § 1401(b)(1)).

13       **B.  Interest**

14       Interest on unpaid contributions must be calculated "by using the rate provided under the plan,

15   or, if none, the rate prescribed under Section 6621 of Title 26."  Under the Delinquency Collection

16   Procedures adopted by the Trustees, Plaintiffs are entitled to 10% simple interest on unpaid

17   contributions due after January 1, 2010.  Joint Statement, ECF No. 128 ¶ 15; Trento Declaration,

18   ECF No. 113 ¶¶ 6-7 & Exs. B-C.  Under ERISA § 4219(c)(5) (29 U.S.C. 1399(c)(5)), interest on the

19   accelerated withdrawal liability accrues from the due date of the first delinquent installment

20   payment.  Accordingly, 10% interest on the unpaid withdrawal liability of $242,614.00 has been

21   accruing since October 1, 2010, the date of Dalecon's first missed installment payment.  Interest in

22   the sum of $77,171.67 has accrued from October 1, 2010 through December 5, 2013, the date on

23   which Plaintiffs noticed its motions for hearing.  Trento Declaration, ECF No. 113 ¶ 11.  Thus,

24   Plaintiffs are entitled to this amount of interest, which will continue to accrue at a rate of $66.47 per

25   day from December 5, 2013 through the date of judgment.

26       **C.  Liquidated Damages**

27       Under ERISA § 502(g)(2) (29 U.S.C. § 1132(g)(2)), liquidated damages may be awarded when:

28   (1) the employer is delinquent at the time the action is filed, (2) the court enters a judgment against

the employer, and (3) the plan provides for an award of liquidated damages.  *See Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 258 (9th Cir. 1996).  Here, Dalecon is currently in default on the entire unpaid withdrawal liability as no payments have been made (at least as of December 12, 2013).  The Delinquency Collection Procedures adopted by the Trustees provide for liquidated damages at the rate of 20% of the delinquent amount upon commencement of litigation. Complaint, ECF No.  Joint Statement, ECF No. 128 ¶ 15; Trento Declaration, ECF No. 113 ¶¶ 6-7 & Exs. B-C. Thus, Plaintiffs are entitled to recover liquidated damages of $48,522.80 ($242.614.00 x 0.2 = $48,522.80) because they were required to file this suit in an attempt to recover the withdrawal liability owed.

**D. Attorney's Fees and Costs**

Plaintiffs also ask for attorney's fees of $54,867.50 and costs of $1,713.80.  Richardson Declaration, ECF No. 112 ¶¶ 9-19; Motion for Summary Judgment, ECF No. 127 at 17.

*1. Attorney's Fees*

As for the requested attorneys' fees, an award of fees is mandatory because withdrawal liability is unpaid, and the Plan provides for reasonable fees and costs.  *See Nw. Adm'rs*, 104 F.3d at 257. Fees also are allowed and appropriate under the terms of the CBAs.

To determine a reasonable fee award in a case like this, federal courts use the lodestar method. *Grove v. Wells Fargo Financial Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010).  The court calculates a "lodestar amount" by multiplying the number of hours counsel reasonably spend on the litigation by a reasonable hourly rate.  *Id.*

*i. Reasonable Hourly Rate*

A reasonable hourly rate is that prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). The relevant community is "the forum in which the district court sits," which here is the Northern District of California.  *Camacho*, 523 F.3d at 979.  The party requesting fees must produce satisfactory evidence—in addition to the attorney's own affidavits or declarations—that the rates are in line with community rates.  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Jordan v.*

*Multomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987).  Plaintiffs described the qualifications and

rates of attorneys Julie A. Richardson (initially $195.00 per hour, and later $205.00 per hour),

Richard C. Johnson ($275.00 per hour), Shaamini A. Babu (initially $195.00 per hour, and later

$205.00 per hour), and of the paralegals Jonathan Sha (initially $115.00 per hour, and later $120.00

per hour) and Barbara Savino (initially $115.00 per hour, and later $120.00 per hour).  Richardson

Declaration, ECF No. 112 ¶¶ 12-17.  Plaintiffs also submit copies of six orders in which courts in

this district have awarded their counsel's rates in similar cases.  *Id.* ¶ 11 & Ex. C.  The court's own

review also establishes that courts in this district have approved roughly similar hourly rates for

counsel.  *See, e.g.*, *Pension Trust Fund for Operating Engineers v. Kickin Enters.*, No. C-11-03685

JCS, 2012 WL 6711557, at *8-9 (N.D. Cal. Dec. 20, 2012); *Operating Engineers' Pension Trust

Fund v. Clark's Welding and Mach.*, No. 09–0044 SC, 2010 WL 1729475, at *5 (N.D. Cal. Apr. 27,

2010) (finding paralegal rates of $110 per hour, associate rates of $180–185 per hour, and

shareholder rates of $255 per hour to be reasonable).  This court, too, finds that Plaintiffs' counsels'

hourly rates are reasonable.

### ii.  Reasonable Hours Expended

Reasonable hours expended on a case are hours that are not "'excessive, redundant, or

otherwise unnecessary.'"  *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  The party requesting fees must provide detailed

time records documenting the tasks completed and the time spent.  *See Hensley*, 461 U.S. at 434;

*McCown*, 565 F.3d at 1102; *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 945-46 (9th Cir.

2007).

Plaintiffs seek attorney's fees for 152.3 hours of attorney time and 190.7 hours of paralegal time.

Richardson Declaration, ECF No. 112 ¶¶ 13-17 & Ex. D (billing records).  Plaintiffs' counsel

summarizes the billing records and the time spent as follows:

> The attorneys' fees and costs specified herein were incurred by the Trust in
> connection with the review of files; tracking of statutory deadlines applicable to
> withdrawal liability; preparation of the Complaint; electronic filings and service of
> documents; service of Defendants; correspondence with Trustees, ATPA, and the
> Union district representatives; legal research; analysis of controlled group members
> and assets; preparation of initial disclosures; tracking of bankruptcy procedures;
> preparation of discovery; review of investigative documents; communication by
> letter, e-mail and telephone with counsel for Defendants regarding this action;

1
2
3
4

preparation of mediation statement; preparation and attendance of mediation; preparation of case management conference statement and attendance of case management conference; and preparation of the Motion for Default Judgment, supporting declarations and Proposed Judgment., discussions with opposing counsel and withdrawal of the default; dismissal of the bankrupt defendants; preparation of this motion for summary judgment and renewed motion for default judgment.

5   *Id.* ¶ 10.  Based on the court's review of Plaintiffs' billing records in support of this summary, the

6   court finds that the fees for attorney and paralegal work are reasonable.  Accordingly, Plaintiffs are

7   entitled to attorneys' fees in the amount of $53,367.50.

8       Plaintiffs also request reimbursement for their fees in connection with the preparation for and

9   attendance at the hearing of on their motions.  Richardson Declaration, ECF No. 112 ¶ 18; Motion

10  for Summary Judgment, ECF No. 127 at 17.  They estimate that such fees will amount to $1,500.00.

11  Richardson Declaration, ECF No. 112 ¶ 18.  The court declines to recommend awarding this amount

12  because Plaintiffs have not documented how they arrived at this amount or their entitlement to

13  estimated fees.

14          *2.  Costs*

15      As for the requested costs of $1,713.80, they are comprised of $125 in investigative fees, a $350

16  filing fee, $445.62 in messenger and overnight mail fees, $538.18 in research, and a $255 process

17  service fee.  *Id.*  These costs are reasonable.

18                              **CONCLUSION**

19      Based on the foregoing, the court **GRANTS** Plaintiffs' motion for summary judgment against

20  Dalecon and finds that Plaintiffs should be awarded $423,389.77, which includes $242,614 in

21  assessed withdrawal liability, $77,171.67 in interest, $48,522.80 in liquidated damages, $53,367.50

22  in attorney's fees, and $1,713.80 in costs.

23      As discussed in the related Report and Recommendation (ECF No. 142) regarding Plaintiffs'

24  motion for default judgment against the Defaulting Defendants, the separate judgment under Rule

25  58(a) should reflect that liability for Dalecon and the Defaulting Defendants is joint and several.

26      **IT IS SO ORDERED.**

27  Dated: March 12, 2014

28
                                    _____
                                    LAUREL BEELER
                                    United States Magistrate Judge