UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| PENSION TRUST FUND FOR OPERATING ENGINEERS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DALECON, INC., et al.,<br><br>Defendants.<br>_____/ | No. C 11-02851 LB<br><br>**ORDER DIRECTING THE CLERK OF THE COURT TO REASSIGN THIS ACTION TO A DISTRICT JUDGE**<br><br>**REPORT AND RECOMMENDATION**<br><br>[Re: ECF Nos. 115] |

**INTRODUCTION**

In this action, plaintiffs Pension Trust Fund for Operating Engineer (the "Trust"), F.G. Crosthwaite, and Russell E. Burns (collectively, "Plaintiffs") sued Dalecon, Inc. ("Dalecon"), Aleut Sons Construction, Inc. ("Aleut Sons Construction"), Dale Stickney Construction, Inc. ("Dale Stickney Construction"), Dale Homes, Inc. ("Dale Homes"), Dale Properties, Inc. ("Dale Properties"), Point West Properties, LLC ("Point West"), RHS Norcal Investments, LLC ("RHS"), Plus Housing & Development, Inc. ("Plus Housing"), DSCI Group, Inc. ("DSCI"), and individuals Ronald Stickney ("Mr. Stickney") and James Underwood ("Mr. Underwood") (collectively, "Defendants"), for Dalecon's failure to pay withdrawal liability in violation of the parties' collective bargaining agreements, the trust agreement, and federal law. *See* Complaint, ECF No. 1.[1] Mr.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page number at the top of the document.

C 11-02851 LB
ORDER; REPORT AND RECOMMENDATION

Stickney, Mr. Underwood, and Dale Stickney Construction were dismissed from this action. Voluntary Dismissal, ECF No. 108; Stipulation of Dismissal, ECF No. 121. The Clerk of the Court entered default against Aleut Sons Construction, Dale Homes, Dale Properties, Point West, RHS, Plus Housing, and DSCI (the "Defaulting Defendants"). Entry of Default, ECF No. 14. The court granted summary judgment against Dalecon, *see* 3/12/2014 Order, ECF No. 141, and Plaintiffs now move for default judgment against the Defaulting Defendants.[2] The court held a hearing on the motion on February 20, 2014. 2/20/2014 Minute Order, ECF No. 140. Because the Defaulting Defendants have not consented to or declined the court's jurisdiction, *see* 28 U.S.C. § 636, the court **DIRECTS** the Clerk of the Court to reassign this action to a district judge. The court **RECOMMENDS** that the newly-assigned district judge grant Plaintiffs' motion and enter judgment against the Defaulting Defendants, jointly and severally, in the amount of $242,614 in assessed withdrawal liability, $77,171.67 in interest, $48,522.80 in liquidated damages, $53,367.50 in attorney's fees, and $1,713.80 in costs, for a total award of $423,389.77.[3]

**STATEMENT**

**I. FACTS**

This action arises under Employment Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1001-1461 (1982).

The Trust is: (a) an employee benefit plan as defined in the ERISA § 3(3) (29 U.S.C. § 1002(3)); (b) an "employee benefit pension plan" as defined in ERISA § 3(2) (29 U.S.C. § 1002(2)); and (c) a

---

[2] Pursuant to 28 U.S.C. § 636(c), Plaintiffs and Dalecon previously consented to the undersigned's jurisdiction, *see* Consent (Plaintiffs), ECF No. 10; Consent (Dalecon), ECF No. 97, and at the February 20, 2014 hearing, in light of the Defaulting Defendants' failure to appear in this action, Plaintiffs and Dalecon specifically consented again to the undersigned deciding Plaintiffs' motion for summary judgment, *see* 2/20/2014 Minute Order, ECF No. 140.

[3] In granting Plaintiffs' motion for summary judgment against Dalecon, the court found that Plaintiffs are entitled to an award of $423,389.77 from Dalecon. *See* 3/12/2014 Order, ECF No. 141. In addition to entering judgment against the Defaulting Defendants, the court requests that the newly-assigned district judge enter judgment against Dalecon as well. Assuming no objections, the separate judgment under Rule 58(a) should be entered against Dalecon and the Defaulting Defendants, jointly and severally, for this amount.

"multiemployer plan" as defined in ERISA §§ 3(37) and 4001(a)(3) (29 U.S.C. §§ 1002(37) and 1301(a)(3)). Complaint, ECF No. 1 ¶ 6; Joint Statement, ECF No. 128 ¶ 2; Trento Declaration, ECF No. 113 ¶ 2. The Trust primarily covers employers in the building and construction industry. Trento Declaration, ECF No. 113 ¶ 2. The Trust is maintained pursuant to the Labor Management Relations Act § 302(c) (29 U.S.C. §186(c)) and is jointly administered. Complaint, ECF No. 1 ¶ 6; Trento Declaration, ECF No. 113 ¶ 2. At all relevant time periods, Associated Third Party Administrators ("ATPA") was the third party administrator for the Trust. Joint Statement, ECF No. 128 ¶ 3; Trento Declaration, ECF No. 113 ¶ 1.

Plaintiffs F.G. Crosthwaite and Russell E. Burns are members of the Board of Trustees of the Trust ("Trustees"). Complaint, ECF No. 1 ¶ 7; Trento Declaration, ECF No. 113 ¶ 3. The Trustees are "fiduciaries" with respect to the Trust as defined in ERISA § 3(21)(A) (29 U.S.C. § 1002(21)(A)) and are collectively the "plan sponsor" of the Board of Trustees within the meaning of ERISA §§ 3(16)(B)(iii) and 4001(a)(10)(A) (29 U.S.C. §§ 1002(16)(B)(iii) and 1301(a)(10)(A)). Complaint, ECF No. 1 ¶ 7. As Trustees of the Trust, they are empowered to bring this action on behalf of the Trust pursuant to ERISA §§ 4301(a)(1) & (b) and 502(a)(3) (29 U.S.C. §§ 1132(a)(3) and 1451(a)(1) & (b)). Complaint, ECF No. 1 ¶ 7.

Defendant Dalecon is a dissolved California corporation with its principal place of business located at 2727 Churn Creek Road, Suite A, Redding, California at all relevant time periods. Complaint, ECF No. 1 ¶ 8; Joint Statement, ECF No. 128 ¶ 4; Richardson Declaration, ECF No. 112 ¶ 4 & Ex. A. Dalecon was an employer within the meaning of ERISA § 3(5) (29 U.S.C. § 1002(5)) and the National Labor Relations Act ("NLRA") § 2(2) (29 U.S.C. §152(2)) and was engaged in an industry affecting commerce within the meaning of ERISA § 3(11) and (12) (29 U.S.C. § 1002(11) and (12)). Complaint, ECF No. 1 ¶¶ 8, 15; Joint Statement, ECF No. 128 ¶ 5. Dalecon was a participating employer in the Trust pursuant to collective bargaining agreements ("CBAs") with the Operating Engineers Local Union No. 3 ("Union") which required it to make fringe benefit contributions for all covered work performed by its employees. Complaint, ECF No. 1 ¶ 15; Joint Statement, ECF No. 128 ¶¶ 6 (listing six collective bargaining agreements), 7; Trento Declaration, ECF No. 113 ¶ 5 & Ex. A (attaching those agreements). Dalecon was owned, operated, and

controlled by Defendants James Underwood and Ronald Stickney. Complaint, ECF No. 1 ¶ 9. Plaintiffs allege that Mr. Underwood and Mr. Stickney also controlled the Defaulting Defendants, making Dalecon and the Defaulting Defendants (collectively, the "Entity Defendants") part of the same controlled group. Complaint, ECF No. 1 ¶ 9[4]; Joint Statement, ECF No. 128 ¶ 26. This means that the Entity Defendants are treated as a single employer pursuant to ERISA § 4001(b)(1) (29 U.S.C. §1301(b)) and therefore are jointly and severally liable for the withdrawal liability at issue here. Complaint, ECF No. 1 ¶ 9.

On or about May 2007, Dalecon became delinquent under the CBAs. Complaint, ECF No. 1 ¶ 16. An audit revealed further delinquent amounts for the period from June 2004 through June 2007. *Id.* Thus, on October 10, 2007, Plaintiffs filed the action entitled *Gil Crosthwaite, et al. v. Dalecon, Inc., et al.*, Case No. C07-5192 WHA (the "Delinquency Action"), seeking those delinquent contributions pursuant to 29 U.S.C. § 1945.[5] *Id.*; *see* Delinquency Action, ECF No. 1 (Oct. 10, 2007).

Plaintiffs voluntarily dismissed the Delinquency Action on October 17, 2008, after the parties

---

[4] Specifically, Plaintiffs allege in Paragraph 9 of their Complaint:

> Plaintiffs are informed and believe that Defendant Stickney and Defendant Underwood are the sole shareholders and operators of Defendant Dalecon. Further, Plaintiff are informed and believe that Defendants Stickney and Underwood also own and operate all of the other named defendant entities out of Defendant Dalecon's principal place of business located at 2727 Churn Creek Road, Suite A. Redding, California. All defendant entities are considered to be trades or businesses under common control. Thus, the entity Defendants are treated as a single employer and are jointly and severally liable for Defendant Dalecon's withdrawal liability pursuant to ERISA § 4001(b)(1).

Complaint, ECF No. 1 ¶ 9.

[5] 29 U.S.C. § 1145 provides, "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement." Section 1145 thus creates a claim against employers who do not make timely contributions as required under a collective bargaining agreement. *See Trustees of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA Inc.*, 572 F.3d 771, 774-76 (9th Cir. 2009); *Board of Trustees v. RBS Washington Blvd. LLC*, No. C 09-06660 WHA, 2010 WL 145097, at *2 (N.D. Cal. Jan. 8, 2010).

entered into a stipulated settlement agreement on October 10, 2008. Joint Statement, ECF No. 128 ¶¶ 9, 24-29 & Ex. 1 (the "Stipulation"[6]). Pursuant to the Stipulation, Dalecon and Mr. Stickney agreed to pay Plaintiffs $136,000 in settlement of their claims for delinquent contributions. *Id.*, ECF No. 128, Ex. 1 ¶ 2(a). The Stipulation included the following relevant terms:

> 1. Under the terms of their Collective Bargaining Agreement and Trust Agreements, Plaintiffs contend that Defendant[s have] become indebted to the Plaintiffs for contributions, liquidated damages, interest, [and] attorneys fees and costs, including those amounts found due on an audit of Defendants' records. Plaintiffs filed this action to seek to collect the amounts they claim are due from Defendant[s]. The parties acknowledge and agree that by this Agreement and Stipulation they are compromising disputed claims[.]
>
> 2. The parties to this action have agreed to resolve this matter as follows:
>
> (a) Defendant shall pay the amount of $136,000 (the "Settlement Amount") as follows:
>
> Within thirty (30) days of Defendant's execution of this Stipulation, defendant will make an initial payment in the amount of $20,000.00. Within thirty (30) days after the date of the initial payment, defendant will make a second payment in the amount of $20,000.00.
>
> Thereafter, defendant will continue with monthly payments of $10,000.00 to be received by plaintiffs on or before the 15th of each month beginning with December 15, 2008, and continuing through August 15, 2009, and one final monthly payment of $6,000.00, plus all accrued interest, by September 15, 2009. Defendant shall have the right to increase said monthly payments at any time and shall incur no prepayment penalties.
>
> (b) Interest will continue to accrue on the unpaid balance at the rate of 1% per month (12% per annum) as provided for in the Bargaining Agreement and Trust Agreements.
>
> (c) Each payment shall be applied first to unpaid interest and then to the reduction of the principal balance.
>
> (d) All payments made pursuant to this Stipulation shall be made payable to the "Operating Engineers Trust Funds," and timely delivered to Michele R. Stafford, Saltzman & Johnson Law Corporation, 44 Montgomery Street, Suite 2110, San Francisco, CA 94104, or to such other address as may be specified by Plaintiffs.
>
> (e) Upon execution of this Stipulation, Plaintiffs will file a Dismissal without Prejudice of the instant action. This Stipulation is in complete satisfaction of all claims made by Plaintiffs in this action. Accordingly, the parties release each other and their respective agents, employees, officers, shareholders, directors, successors,

---

[6] To avoid confusion, the court refers to the parties' agreement, which is titled "Settlement Agreement and Stipulation for Entry of Judgment," as the "Stipulation" rather than the "Settlement Agreement" or "Stipulated Settlement" because the parties to refer to it as the "Stipulation" in their joint statement of undisputed facts and briefs.

> assigns, and attorneys from all injuries, damages, claims[,] and causes of action whatsoever, of whatever kind of nature, whether known or unknown, suspected or unsuspected, including any claims which the parties made or could have made.
>
> The parties acknowledge and agree that there is a risk that after execution of this Stipulation they will incur or discover losses, damages, or injuries which are in some way caused by the events which were the subject of this release, but which are unknown and unanticipated at the time this Stipulation is signed. The parties hereby assume the above-mentioned risks and understand that this Stipulation shall apply to all unknown or unanticipated results of the events which were the subject of this release, as well as those known and anticipated, and upon advice of counsel, waive and all rights under California Civil Code section 1542[,] which section has been explained and reads as follows:
>
>> A general release does not extend to claims which the creditor does not known or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.
>
> The mutual releases stated above do not affect the parties' obligations set forth in this Stipulation.
>
> A dismissal with Prejudice shall be filed by Plaintiffs once payment has been made in full, and Plaintiffs confirm that the final payment(s) have cleared the bank.

*Id.* ¶¶ 1-2.

Dalecon ceased contributing to the Trust for work performed after August 1, 2007, and thereby made a complete withdrawal from the Trust under ERISA § 4203 (29 U.S.C. § 1383). Complaint, ECF No. 17; Joint Statement, ECF No. 128 ¶ 8; Trento Declaration, ECF No. 113 ¶ 8.

Subsequent to the withdrawal, on three to four occasions, Plaintiffs were notified that "Dalecon trucks and equipment" were seen on worksites on which the workers were performing work of the type for which contributions were previously required to be made by Dalecon under the CBAs. *See* Complaint, ECF No. 1 ¶ 18; Richardson Declaration, ECF No. 112 ¶ 5.[7] As Plaintiffs had

---

[7] Paragraph 5 of the Richardson Declaration states as follows: "Subsequent to the withdrawal[,] the Union's District Representative observed Dalecon trucks and equipment on worksites, where the workers were performing work of the type for which contributions were previously required to be made by Defendant Dalecon under its Bargaining Agreement. This triggered the Fund to assess withdrawal liability." Richardson Declaration, ECF No. 112 ¶ 5. Dalecon objects to this paragraph as lacking foundation as required by Federal Rule of Evidence 602 and as containing hearsay that should be excluded under Federal Rule of Evidence 801(c). Objection, ECF No. 134. But as Plaintiffs explain, this statement is offered to show the basis for the Trust's decision to assess withdrawal liability, not to show the truth of the statement. Reply, ECF No. 135 at 2 n.3. Moreover, to challenge Plaintiffs' statement that the workers were performing

information indicating that Defendants had continued covered work within 5 years from the time Dalecon ceased to contribute to the Trust, withdrawal liability was assessed on the basis that Dalecon did not qualify for the building and construction exception to withdrawal liability under ERISA § 4203(b) (29 U.S.C. §1383(b)).  Complaint, ECF No. 1 ¶ 18.

By letter dated September 2, 2010, Plaintiffs notified Dalecon and its controlled group members of the withdrawal liability assessed against it in the sum of $242,614.00, payable in a lump sum or in quarterly installments of $59,210.85, pursuant to ERISA §§ 4201- 4203 (29 U.S.C. § 1381 et seq.).  Complaint, ECF No. 1 ¶¶ 19-20; Joint Statement, ECF No. 128 ¶¶ 10-11; Trento Declaration, ECF No. 113 ¶ 9 & Ex. D (September 2, 2010 Letter).  Plaintiffs calculated the withdrawal liability as of December 31, 2006, pursuant to ERISA § 4211(b)(2)(A) (29 U.S.C. § 1391(b)(2)(A)).  Complaint, ECF No. 1 ¶ 20(a); Joint Statement, ECF No. 128 ¶ 11(a); Trento Declaration, ECF No. 113, Ex. D.  Plaintiffs also advised Dalecon that it had the option of challenging the withdrawal liability calculation by requesting review within ninety days of receiving the assessment as provided by ERISA § 4219(b)(2) (29 U.S.C. § 1399(b)(2)) and thereafter, timely demanding arbitration under ERISA Section § 4221(a) (29 U.S.C. § 1401(a)).  Complaint, ECF No. 1 ¶ 20; Joint Statement, ECF No. 128 ¶ 11; Trento Declaration, ECF No. 113, Ex. D.  Dalecon did not request review or initiate arbitration.  Complaint, ECF No. 1 ¶ 21; Joint Statement, ECF No. 128 ¶ 14.

Dalecon also failed to make any quarterly withdrawal liability installment payments.  Complaint, ECF No. 1 ¶ 21; Joint Statement, ECF No. 128 ¶ 13; Trento Declaration, ECF No. 113 ¶ 10.  On December 6, 2010, the Trust's legal counsel sent a notice to cure to Dalecon (by way of Mr. Stickney) stating that the first quarterly withdrawal liability payment, which was due on October 1, 2010, had not been received by the Trust.  Complaint, ECF No. 1 ¶ 22; Joint Statement, ECF No. 128 ¶ 12; Richardson Declaration, ECF No. 112 ¶ 7 & Ex. B (December 6, 2010 Letter).  The Trust's counsel directed Dalecon to cure the delinquency and advised that if payment was not received within 60 days Dalecon would be in default under ERISA § 4219(c)(5) (29 U.S.C.

---

work of the type for which contributions were previously required to be made by Defendant Dalecon under its Bargaining Agreement, Defendants must have timely demanded arbitration under ERISA Section § 4221(a) (29 U.S.C. § 1401(a)), which they did not do.

§1399(c)(5). Complaint, ECF No. 1 ¶ 22; Joint Statement, ECF No. 128 ¶ 12; Richardson Declaration, ECF No. 112, Ex. B. Dalecon failed to cure the delinquent installment payments within 60 days. Complaint, ECF No. 1 ¶¶ 22-23; Joint Statement, ECF No. 128 ¶ 13; Richardson Declaration, ECF No. 112 ¶ 7. As a result, pursuant to ERISA § 4219(c)(5) (29 U.S.C. § 1399(c)(5)), Plaintiffs accelerated the entire withdrawal liability which became immediately due and payable with interest and liquidated damages on February 7, 2011 (*i.e.*, 60 days after Plaintiffs' notice to cure). Complaint, ECF No. 1 ¶ 23; Richardson Declaration, ECF No. 112 ¶ 7.

## II. PROCEDURAL HISTORY

Plaintiffs filed their complaint in this action on June 10, 2011. Complaint, ECF No. 1. They served each Defendant with the complaint and summons on July 28, 2011. Proofs of Service, ECF Nos. 7, 8, 11. Mr. Underwood and Mr. Stickney answered the complaint, but the Entity Defendants failed to appear in this action, and upon Plaintiffs' request, the Clerk of the Court entered their default. Answer, ECF No. 6; Request, ECF No. 14; Entry of Default, ECF No. 15.

While this action was pending, Dale Stickney Construction and both Individual Defendants filed for bankruptcy and therefore Plaintiffs' claims against them were or are still subject to an automatic stay under 11 U.S.C. § 362. Notices of Automatic Stay, ECF No. 13, 28, 57. Plaintiffs subsequently dismissed Mr. Underwood, Mr. Stickney, and Dale Stickney Construction from this action. Voluntary Dismissal (Underwood and Dale Stickney Construction), ECF No. 108; Stipulation of Dismissal (Stickney), ECF No. 121. This left only the Dalecon and the Defaulting Defendants as defendants to this action.

Plaintiffs filed a motion for summary judgment against Dalecon, and on March 12, 2014, the court granted their motion, held that the Stipulation covered only liability for delinquent contributions and did not cover withdrawal liability, and found Dalecon liable to Plaintiffs for $423,389.77, which includes $242,614 in assessed withdrawal liability, $77,171.67 in interest, $48,522.80 in liquidated damages, $53,367.50 in attorney's fees, and $1,713.80 in costs. 3/12/2014 Order, ECF No. 141.

Plaintiffs also filed a motion for default judgment against the Defaulting Defendants. Motion for Default Judgment, ECF No. 115. In their motion, Plaintiffs ask for an award of $242,614 in

assessed withdrawal liability, $77,171.67 in interest, $48,522.80 in liquidated damages, $54,867.50 in attorney's fees, and $1,713.80 in costs, for a total award of $424,889.77. Motion for Default Judgment, ECF No. 115 at 8-10. The Defaulting Defendants have not appeared or otherwise responded to Plaintiffs' motion for default judgment. The court held a hearing on the motion on February 20, 2014. 2/20/2014 Minute Order, ECF No. 140. Defaulting Defendants did not appear at it. *Id.* Because they did not, the court issues this report and recommendation.

## ANALYSIS

### I. THE COURT RECOMMENDS THAT DEFAULT JUDGMENT BE ENTERED AGAINST THE DEFAULTING DEFENDANTS

#### A. Legal Standard

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for—and the court may grant—a default judgment against a defendant who has failed to plead or otherwise defend an action. *See Draper*, 792 F.2d at 925. Default judgments generally are disfavored because "cases should be decided on their merits whenever reasonably possible." *Eitel v. McCool,* 782 F.2d 1470, 1472 (9th Cir. 1986). The court must consider the following factors—commonly referred to as the *Eitel* factors—when deciding whether to use its discretion to grant a motion for default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the FAC; (4) the sum of money at stake in the action; (5) the possibility of a dispute about the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.* at 1471-72.

#### B. Subject-Matter Jurisdiction and Personal Jurisdiction

Before entering default judgment, the court must determine whether it has subject-matter jurisdiction over the action and personal jurisdiction over the Defaulting Defendants. *See In re Tulli*, 172 F.3d 707, 712 (9th Cir. 1999).

*1. Subject-Matter Jurisdiction*

Plaintiffs allege that the Defaulting Defendants are jointly and severally liable for Dalecon's complete withdrawal from the Trust on August 1, 2007, and that the Entity Defendants are subject to

withdrawal liability under ERISA §§ 4201-4203 (29 U.S.C. § 1383). The court has subject-matter jurisdiction over this federal claim. *See* 28 U.S.C. § 1331(a).

### 2. *Personal Jurisdiction*

The Defaulting Defendants were served in California, and Plaintiffs alleged that the Defaulting Defendants engaged in business activities in the Northern District of California that are the subject of this action. Complaint, ECF No. 1 ¶¶ 2, 4, 9, 18; Proof of Service, ECF No. 11. The court has personal jurisdiction over them. *See*, *e.g.*, *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986).

**C. Default Judgment**

The *Eitel* factors, which are addressed below, favor entry of default judgment against the Defaulting Defendants.

### *1. The Merits and Sufficiency of the Complaint (The Second and Third Eitel Factors)*

After entry of default, well-pleaded allegations in the operative complaint regarding liability and entry of default are taken as true, except as to the amount of damages. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The court is not required to make detailed findings of fact. *Id.* Default judgment cannot exceed in amount what is demanded in the pleadings. Fed. R. Civ. P. 54(c)

#### *i. The Statutory Withdrawal Liability Scheme*

Pension plans, including those like the Trust here, are federally regulated pursuant to ERISA, 29 U.S.C. § 1001 *et seq.* The MPPAA, 29 U.S.C. §§ 1381–1453, amended ERISA "to allow plans to impose proportional liability on withdrawing employers for the unfunded vested benefit obligations of multiemployer plans."[8] *Carpenters Pension Trust Fund v. Underground Constr. Co., Inc.*, 31 F.3d 776, 778 (9th Cir. 1994). "Prior to the enactment of the MPPAA, employers could withdraw from pension plans without paying their share of the plans' unfunded vested benefit liability." *Woodward Sand Co., Inc. v. W. Conf. Teamsters Pension Trust Fund*, 789 F.2d 691, 694 (9th Cir. 1986) (citing *Bd. of Trs. of the W. Conf. of Teamsters Pension Trust Fund v. Thompson Building*

---

[8] For a summary of the legislative history, see *Pension Benefit Guarantee Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720-25 (1984).

*Materials, Inc.*, 749 F.2d 1396, 1401-02 (9th Cir. 1984), *cert. denied*, 471 U.S. 1054 (1985)). "The employers could simply cease making pension contributions (e.g., by ceasing covered business) and avoid any responsibility for the actual, but unfunded, liabilities of the plans." *Id.* "The other employers remaining in the plan were forced either to assume these additional liabilities or to withdraw, resulting in unfairness to the remaining employers or insolvency of the plan." *Id.* (citing *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722, n.2 (1984)).

"To alleviate these problems, Congress established a system for computing and assessing the liability of employers who withdraw from pension plans." *Id.* (citing 29 U.S.C. § 1361 *et seq.*). "This system is designed to make employers pay their share of the real cost of pensions, by paying a share of the difference between the assets already contributed and the vested benefit liability." *Id.* (citing *R.A. Gray & Co.*, 467 U.S. at 723). "When an employer withdraws from a multiemployer pension plan, such as the one administered by the Fund, ERISA requires a withdrawing employer to compensate a pension plan for benefits that have already vested with the employees at the time of the employer's withdrawal." *Id.* (citing *R.A. Gray & Co.*, 467 U.S. at 724). "This 'withdrawal liability' is assessed against the employer to 'ensure that employees and their beneficiaries [are not] deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans.'" *Id.* (citing *R.A. Gray & Co.*, 467 U.S. at 720). Given the remedial purposes of ERISA and the MPPAA, their provisions should be liberally construed to protect plan participants. *See Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 175 (3d Cir. 2002) (citation omitted); *Teamsters Pension Trust Fund–Bd. of Trs. of W. Conference v. Allyn Transp. Co.*, 832 F.2d 505, 507 (9th Cir. 1987) (citation omitted).

29 U.S.C. § 1399 sets forth the procedure regarding the calculation and notification of a withdrawing employer's withdrawal liability. As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor must notify the employer of the amount owed and provides a schedule of payments. 29 U.S.C. § 1399(b)(1). The employer is entitled, within ninety days of such notice, to ask the sponsor to review any specific matter relating to the determination of the employer's withdrawal liability and schedule of payments, to identify any inaccuracies, or to provide additional relevant information. 29 U.S.C. § 1399(b)(2)(A). After a reasonable review of matters

raised, the plan sponsor then must notify the employer of its decision. 29 U.S.C. § 1399(b)(2)(B).

29 U.S.C. § 1401 provides a procedure in the event of a dispute. Section 1401(a)(1)(A) states:

> (1) Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 [29 U.S.C. § 1381–99] shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60–day period after the earlier of (A) the date of notification to the employer under section 4219(b)(2)(B) [29 U.S.C. § 1399(b)(2)(B)], or (B) 120 days after the date of the employer's request under section 4219(b)(2)(A) [29 U.S.C. § 1399(b)(2)(A)].

Section 1401(b)(1) goes on to state:

> If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan sponsor under section 4219(b)(1) [29 U.S.C. § 1399(b)(1)] shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

An employer that fails to initiate arbitration in a timely manner waives defenses and objections that must have been raised in arbitration. *See Bd. of Trs Sheet Metal Workers' Nat'l Pension Fund v. BES Servs., Inc.*, 469 F.3d 369, 376 (4th Cir. 2006); *Bd. of Trs of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Kero Leasing Corp.*, 377 F.3d 288, 294 n.5 (3d Cir. 2004); *Cent. States, Se. and Sw. Areas Pension Fund v. Midwest Motor Exp., Inc.*, 181 F.3d 799, 805 (7th Cir. 1999); *Mason and Dixon Tank Lines, Inc. v. Cent. States, Se. and Sw. Areas Pension Fund*, 852 F.2d 156, 166 & n.11 (6th Cir. 1988); *Allyn Transp. Co.*, 832 F.2d at 505-06 (9th Cir. 1987).

### ii. The Second and Third Eitel Factors Favor Entering Default Judgment

Plaintiffs have made a prima facie showing that they are entitled to withdrawal liability. Although Plaintiffs' non-damages allegations are taken true, Plaintiffs also provided evidence to support their claims. Their allegations and evidence show that Dalecon ceased contributing to the Trust for work performed after August 1, 2007, and thereby made a complete withdrawal from the Trust. They also show that Plaintiffs complied with the MPPAA's procedures for assessing withdrawal liability: they notified Dalecon and its controlled group members of the withdrawal liability assessed against it in the sum of $242,614.00, payable in a lump sum or in quarterly installments of $59,210.85; they advised Dalecon that it had the option of challenging the withdrawal liability calculation by requesting review within ninety days of receiving the assessment and thereafter by timely demanding arbitration. Dalecon did not request review or initiate

arbitration also failed to make any quarterly withdrawal liability installment payments. The Trust's legal counsel then sent a notice to cure to Dalecon (by way of Mr. Stickney) stating that the first quarterly withdrawal liability payment had not been received, directing Dalecon to cure the delinquency, and advising that if payment was not received within 60 days Dalecon would be in default. Dalecon failed to cure the delinquent installment payments within 60 days. As a result, Plaintiffs accelerated the entire withdrawal liability, which then became immediately due and payable with interest and liquidated damages on February 7, 2011. Thus, under ERISA § 4221(b)(1) (29 U.S.C. § 1401(b)(1)), because Plaintiffs complied with the procedures for assessing withdrawal liability that are set forth in 29 U.S.C. § 1399, Plaintiffs' assessed withdrawal liability is binding on the Defaulting Defendants.

These two factors, then, weigh in favor of granting default judgment.

*2. The Remaining Eitel Factors Also Favor Entering Default Judgment*

The remaining *Eitel* factors weigh in favor of granting default judgment.

*i. The Possibility of Prejudice to Plaintiffs*

If the motion is not granted, Plaintiffs have no recourse to seek withdrawal liability. Dalecon is dissolved California corporation, and the Defaulting Defendants are treated as a single employer pursuant to ERISA § 4001(b)(1) (29 U.S.C. §1301(b)) and therefore are jointly and severally liable for the withdrawal liability at issue here.

*ii. The Possibility of a Dispute Concerning a Material Fact*

The Defaulting Defendants never answered Plaintiffs' complaint, so there is no information demonstrating that there is a disputed issue of material fact. To the extent that the Defaulting Defendants might contend that Dalecon never completely withdrew from the Trust and would be exempt from withdrawal liability pursuant to the "building and construction industry" exemption that is found at 29 U.S.C. § 1383(b), such a contention would fail because it would have had to have been raised in arbitration. Thus, the court finds little possibility of a substantial factual dispute

*iii. Excusable Neglect*

There is no suggestion of excusable neglect.

*iv. The Sum of Money at Stake in the Action*

When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. *See Eitel*, 782 F.2d at 1472 (three-million dollar judgment, considered in light of parties' dispute as to material facts, supported decision not to enter default judgment); *Tragni v. Southern Elec. Inc.*, No. 09-32 JF, 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Board of Trustees*, 2010 WL 145097 at *3 (*citing Eitel*, 782 F.2d at 1472). Nevertheless, where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *Board of Trustees of the Sheet Metal Workers Health Care Plan v. Superhall Mechanical, Inc.,* 2011 WL 2600898 at *2 (the sum of money for unpaid contributions, liquidated damages, and attorneys fees were appropriate as they were supported by adequate evidence provided by plaintiffs). The amount sought here ($242,614 in assessed withdrawal liability, $77,171.67 in interest, $48,522.80 in liquidated damages, $54,867.50 in attorney's fees, and $1,713.80 in costs, for a total award of $424,889.77) is appropriate as it is not unreasonable, is supported by the evidence, and was assessed by Plaintiffs pursuant to the procedures set forth in 29 U.S.C. § 1399. This factor does not disfavor entry of default judgment in this case.

*v. The Strong Policy in the Federal Rules Favoring Decisions on the Merits*

Despite the policy of favoring decisions on the merits, default judgment is appropriate when a defendant refuses to litigate a case. Fed. R. Civ. P. 55(b); *see Board of Trustees v. RBS Washington Blvd, LLC*, No. C 09-00660 WHA, 2010 WL 145097, *4 (N.D. Cal. Jan. 8, 2010). This factor also favors entry of default judgment in this case.

**II. THE COURT RECOMMENDS FINDING THAT THE DEFAULTING DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE FOR $423,389.77**

In their motion, Plaintiff request from the Defaulting Defendants $242,614 in assessed withdrawal liability, $77,171.67 in interest, $48,522.80 in liquidated damages, $54,867.50 in attorney's fees, and $1,713.80 in costs, for a total award of $424,889.77. Motion for Default Judgment, ECF No. 115 at 8-10. Plaintiffs are entitled to all of these types of damages under ERISA § 4301 (b) (29 U .S.C. § 1451(b)), which provides that, "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent

contribution (within the meaning of section 515 [29 U.S.C. § 1145] )." The following damages are available where an employer fails to pay required contributions: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages as provided by the plan (not to exceed 20% of the unpaid contributions); and (4) reasonable attorney's fees and costs. 29 U.S .C. § 1132(g)(2). Therefore, Plaintiffs may recover these types of damages on their claim for unpaid withdrawal liability. The appropriate amount of each type of damages is discussed below.

### A. Withdrawal Liability

As explained above, under 29 U.S.C. § 1399, the amount of a withdrawing employer's withdrawal liability is first computed by the pension plan's sponsor. The employer is then notified of the amount owed and is entitled, within ninety days of such notice, to ask the sponsor to review any specific matter relating to the determination of the employer's withdrawal liability. 29 U.S.C. § 1399(c). "Any dispute" between an employer and the plan sponsor relating to the employer's withdrawal liability "shall be resolved through arbitration." 29 U .S.C. § 1401(a)(1). Arbitration may be initiated "within a 60–day period" after the employer is notified of the sponsor's final determination concerning withdrawal liability (or 120 days after the employer requested the sponsor to review the matter, whichever date is earlier). 29 U.S.C. § 1401(a)(1). If arbitration proceedings are not initiated within the time periods prescribed by the statute, "the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1). If the employer fails to make payment when due, and fails to cure the delinquency within sixty days of notice of the delinquency, the plan sponsor is entitled to obtain immediate payment of the entire amount of the employer's outstanding withdrawal liability. 29 U.S.C. § 1399(c)(5).

Here, Plaintiffs assessed Dalecon's withdrawal liability to be $242,614.00. Plaintiffs followed the procedures required by the MPPAA for computing the amount and notifying Dalecon and its controlled group members of the withdrawal liability assessed. Neither Dalecon nor its controlled group members disputed the amount or made any payment. Dalecon was owned, operated, and controlled by Mr. Underwood and Mr. Stickney, who also controlled the Defaulting Defendants, making Dalecon and the Defaulting Defendants part of the same controlled group, which are treated

as a single employer pursuant to ERISA § 4001(b)(1) (29 U.S.C. §1301(b)) and therefore are jointly and severally liable for the withdrawal liability at issue here. Thus, Plaintiffs' assessed withdrawal liability of $127,795.00 is binding on the Defaulting Defendants under ERISA § 4221(b)(1) (29 U.S.C. § 1401(b)(1)).

**B. Interest**

Interest on unpaid contributions must be calculated "by using the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of Title 26." Under the Delinquency Collection Procedures adopted by the Trustees, Plaintiffs are entitled to 10% simple interest on unpaid contributions due after January 1, 2010. Joint Statement, ECF No. 128 ¶ 15; Trento Declaration, ECF No. 113 ¶¶ 6-7 & Exs. B-C. Under ERISA § 4219(c)(5) (29 U.S.C. 1399(c)(5)), interest on the accelerated withdrawal liability accrues from the due date of the first delinquent installment payment. Accordingly, 10% interest on the unpaid withdrawal liability of $242,614.00 has been accruing since October 1, 2010, the date of Defendants' first missed installment payment. Interest in the sum of $77,171.67 has accrued from October 1, 2010 through December 5, 2013, the date on which Plaintiffs noticed its motions for hearing. Trento Declaration, ECF No. 113 ¶ 11. Thus, Plaintiffs are entitled to this amount of interest, which will continue to accrue at a rate of $66.47 per day from December 5, 2013 through the date of judgment.

**C. Liquidated Damages**

Under ERISA § 502(g)(2) (29 U.S.C. § 1132(g)(2)), liquidated damages may be awarded when: (1) the employer is delinquent at the time the action is filed, (2) the court enters a judgment against the employer, and (3) the plan provides for an award of liquidated damages. *See Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 258 (9th Cir. 1996). Here, Dalecon is currently in default on the entire unpaid withdrawal liability as no payments have been made (at least as of December 12, 2013). The Delinquency Collection Procedures adopted by the Trustees provide for liquidated damages at the rate of 20% of the delinquent amount upon commencement of litigation. Complaint, ECF No. Joint Statement, ECF No. 128 ¶ 15; Trento Declaration, ECF No. 113 ¶¶ 6-7 & Exs. B-C. Thus, Plaintiffs are entitled to recover liquidated damages of $48,522.80 ($242.614.00 x 0.2 = $48,522.80) because they were required to file this suit in an attempt to recover the withdrawal

liability owed.

**D. Attorney's Fees and Costs**

Plaintiffs also ask for attorney's fees of $54,867.50 and costs of $1,713.80. Motion for Default Judgment, ECF No. 115 at 2, 10; Richardson Declaration, ECF No. 112 ¶¶ 9-19; Motion for Summary Judgment, ECF No. 127 at 17.

*1. Attorney's Fees*

As for the requested attorneys' fees, an award of fees is mandatory because withdrawal liability is unpaid, and the Plan provides for reasonable fees and costs. *See Nw. Adm'rs*, 104 F.3d at 257. Fees also are allowed and appropriate under the terms of the CBAs.

To determine a reasonable fee award in a case like this, federal courts use the lodestar method. *Grove v. Wells Fargo Financial Cal., Inc.,* 606 F.3d 577, 582 (9th Cir. 2010). The court calculates a "lodestar amount" by multiplying the number of hours counsel reasonably spend on the litigation by a reasonable hourly rate. *Id.*

*i. Reasonable Hourly Rate*

A reasonable hourly rate is that prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). The relevant community is "the forum in which the district court sits," which here is the Northern District of California. *Camacho*, 523 F.3d at 979. The party requesting fees must produce satisfactory evidence—in addition to the attorney's own affidavits or declarations—that the rates are in line with community rates. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Jordan v. Multomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987). Plaintiffs described the qualifications and rates of attorneys Julie A. Richardson (initially $195.00 per hour, and later $205.00 per hour), Richard C. Johnson ($275.00 per hour), Shaamini A. Babu (initially $195.00 per hour, and later $205.00 per hour), and of the paralegals Jonathan Sha (initially $115.00 per hour, and later $120.00 per hour) and Barbara Savino (initially $115.00 per hour, and later $120.00 per hour). Richardson Declaration, ECF No. 112 ¶¶ 12-17. Plaintiffs also submit copies of six orders in which courts in this district have awarded their counsel's rates in similar cases. *Id.* ¶ 11 & Ex. C. The court's own

review also establishes that courts in this district have approved roughly similar hourly rates for counsel. *See, e.g.*, *Pension Trust Fund for Operating Engineers v. Kickin Enters.*, No. C-11-03685 JCS, 2012 WL 6711557, at *8-9 (N.D. Cal. Dec. 20, 2012); *Operating Engineers' Pension Trust Fund v. Clark's Welding and Mach.*, No. 09–0044 SC, 2010 WL 1729475, at *5 (N.D. Cal. Apr. 27, 2010) (finding paralegal rates of $110 per hour, associate rates of $180–185 per hour, and shareholder rates of $255 per hour to be reasonable). This court, too, finds that Plaintiffs' counsels' hourly rates are reasonable.

*ii. Reasonable Hours Expended*

Reasonable hours expended on a case are hours that are not "'excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party requesting fees must provide detailed time records documenting the tasks completed and the time spent. *See Hensley*, 461 U.S. at 434; *McCown*, 565 F.3d at 1102; *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 945-46 (9th Cir. 2007).

Plaintiffs seek attorney's fees for 152.3 hours of attorney time and 190.7 hours of paralegal time. Richardson Declaration, ECF No. 112 ¶¶ 13-17 & Ex. D (billing records). Plaintiffs' counsel summarizes the billing records and the time spent as follows:

> The attorneys' fees and costs specified herein were incurred by the Trust in connection with the review of files; tracking of statutory deadlines applicable to withdrawal liability; preparation of the Complaint; electronic filings and service of documents; service of Defendants; correspondence with Trustees, ATPA, and the Union district representatives; legal research; analysis of controlled group members and assets; preparation of initial disclosures; tracking of bankruptcy procedures; preparation of discovery; review of investigative documents; communication by letter, e-mail and telephone with counsel for Defendants regarding this action; preparation of mediation statement; preparation and attendance of mediation; preparation of case management conference statement and attendance of case management conference; and preparation of the Motion for Default Judgment, supporting declarations and Proposed Judgment., discussions with opposing counsel and withdrawal of the default; dismissal of the bankrupt defendants; preparation of this motion for summary judgment and renewed motion for default judgment.

*Id.* ¶ 10. Based on the court's review of Plaintiffs' billing records in support of this summary, the court finds that the fees for attorney and paralegal work are reasonable. Accordingly, Plaintiffs are entitled to attorneys' fees in the amount of $53,367.50.

Plaintiffs also request reimbursement for their fees in connection with the preparation for and attendance at the motions hearing. Motion for Default Judgment, ECF No. 115 at 2, 10; Richardson Declaration, ECF No. 112 ¶ 18. They estimate that such fees will amount to $1,500.00. Richardson Declaration, ECF No. 112 ¶ 18. The court declines to recommend awarding this amount because Plaintiffs did not document how they arrived at the amount or their entitlement to estimated fees.

*2. Costs*

As for the requested costs of $1,713.80, they are comprised of $125 in investigative fees, a $350 filing fee, $445.62 in messenger and overnight mail fees, $538.18 in research, and a $255 process service fee. *Id*. These costs are reasonable.

## CONCLUSION

Because the Defaulting Defendants have not consented to or declined the court's jurisdiction, *see* 28 U.S.C. § 636, the court **DIRECTS** the Clerk of the Court to reassign this action to a district judge. Based on the foregoing, the court **RECOMMENDS** that the newly-assigned district judge grant Plaintiffs' motion and enter judgment the Defaulting Defendants, jointly and severally, in the amount of $242,614 in assessed withdrawal liability, $77,171.67 in interest, $48,522.80 in liquidated damages, $53,367.50 in attorney's fees, and $1,713.80 in costs, for a total award of $423,389.77.

The separate judgment entered under Rule 58(a) should reflect that liability for Dalecon and the Defaulting Defendants is joint and several. The court directs Plaintiffs to lodge a proposed separate judgment that accords with Rule 58(a).

Any party may file objections to this Report and Recommendation with the district judge within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D. Cal. Civ. L.R. 72. Failure to file an objection may waive the right to review of the issue in the district court.

Plaintiffs are directed to serve a copy of this Report and Recommendation on the Defaulting Defendants.

**IT IS SO ORDERED.**

Dated: March 12, 2014

LAUREL BEELER
United States Magistrate Judge